JOHN H. MAJOR, JR. *v.* STATE OF MARYLAND

[No. 998, September Term, 1975.]

\* \* \*

JAMES WILLIAM FLANAGAN *v.* STATE
OF MARYLAND

[No. 1030, September Term, 1975.]

*Decided June 7, 1976.*

The causes were argued before ORTH, C. J., and MOYLAN and GILBERT, JJ.

In Appeal No. 998, *George E. Burns, Jr., Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *Harriette Cohen, Assistant Public Defender*, on the brief, for appellant.

In Appeal No. 1030, *George E. Burns, Jr., Assistant Public Defender*, with whom were *Alan H. Murrell, Public Defender*, and *Arnold M. Zerwitz, Assistant Public Defender*, on the brief, for appellant.

In both appeals, *Gilbert H. Robinette, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City*, and *Neil Steinhorn, Assistant State's Attorney for Baltimore City*, on the brief, for each appellee.

ORTH, C. J., delivered the opinion of the Court.

The General Assembly, mindful of the safety of persons in this State and heedful of the general welfare, has acted to deter a person who has consumed alcohol from driving a vehicle on the highways of Maryland. There are criminal consequences and administrative consequences. In the two September Term, 1975 appeals which we decide in this opinion, John H. Major, Jr. v. State, No. 998, and James William Flanagan v. State, No. 1030, we are concerned with the criminal consequences of drunken driving. The appeals pose, in different factual postures, a common question: may a person be convicted of driving a vehicle while under the influence of alcohol in the absence of evidence showing the

alcoholic content in his body according to chemical analysis made pursuant to tests prescribed by statute?

## THE LAW

Code, Art. 66½, § 11-902 (a) and (b) created two misdemeanors [1]:

> "(a) It shall be unlawful for any person to drive or attempt to drive or to be in actual physical control of any vehicle within this State while he is in an intoxicated condition.
>
> (b) It shall be unlawful for any person to drive or attempt to drive or to be in actual physical control of any vehicle within this State while his driving ability is impaired by the consumption of alcohol."

Manifestly as an aid in the fact finding process, the Legislature has prescribed that " [i]n a prosecution for a violation of a law concerning a person who is driving or attempting to drive a vehicle in violation of § 11-902 of Article 66½ of the Code a chemical test of his breath, blood, urine, or other bodily substance may be administered to the person for the purpose of determining the alcoholic content in his body." Courts Art. § 10-302. When such a test has been administered, the amount of alcohol in the person's body as shown by the chemical analysis is admissible in evidence in the criminal proceedings. Courts Art. § 10-307 (a).[2]

---

**1.** See Code, Art. 66½, § 17-101 (a). Section 11-902 created two other misdemeanors. It shall be unlawful for any person to drive, or attempt to drive or to be in actual physical control of any vehicle within this State "while he is under the influence of any drug or combination of drugs or combination of alcohol and any drug or drugs to a degree which renders him incapable of safely driving a vehicle", subsection (c), or "while he is under the influence of any controlled dangerous substance", subsection (d).

**2.** The statute provides that the presence of alcohol by weight within designated percentages precludes or permits certain presumptions. Within certain percentages it shall be presumed that the person tested was not intoxicated or impaired by the consumption of alcohol, § 10-307 (b). Specified higher percentages may not give rise to any presumption that the person was or was not in an intoxicated condition or was or was not under the influence of intoxicating liquor, but the percentage of alcohol may be considered with other competent evidence in determining guilt or innocence, § 10-307 (c). Certain higher percentages, however, shall be *prima facie* evidence that the person's driving ability was impaired by the

The vehicle laws attempt to insure that a chemical test be administered. An applicant for a license to operate a motor vehicle upon the highways of this State must, as a condition precedent to the issuance of such license, sign a statement under oath or affirmation consenting to take a chemical test should he be detained upon suspicion of operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor or while his ability is impaired by the consumption of alcohol. Code, Art. 66½, § 6-205.1, subsection (a). Consent of non-residents and unlicensed persons is implied, subsection (b). It is the "duty of any police officer who stops or detains any person who he has reasonable grounds to believe is or has been operating or attempting to operate a motor vehicle under the influence of alcohol, or who is or has been operating or attempting to operate a motor vehicle while his ability was impaired by the consumption of alcohol" to detain such person, request that he take a chemical test to determine the alcoholic content of his blood, breath or urine and to advise the person of the administrative penalties which may be imposed for refusing to take a test. Subsection (c). If a detained person refuses to take a test, subsection (d) spells out a procedure leading to the suspension of his operator's license. None of this means, however, that with respect to a criminal prosecution, evidence of the alcoholic content in the body of the accused according to chemical analysis made pursuant to a prescribed test is a prerequisite of a conviction of the crimes proscribed by Code, Art. 66½, § 11-902. That there be no chemical test administered may come about in several ways. "A person may not be compelled to submit to a chemical analysis. . . . No inference or presumption concerning either guilt or innocence arises because of refusal to submit. The fact of refusal to submit is not admissible in evidence at the trial." Courts Art. § 10-309 (a). These

consumption of alcohol, § 10-307 (d), and the fact of even higher percentages constitutes *prima facie* evidence that the person was in an intoxicated condition, § 10-307 (e).

"Upon request, the results of the test shall be made available to the person tested before trial by an official certificate which is admissible in evidence." Courts Art. § 10-306.

provisions make perfectly clear that a criminal charge under Art. 66½, § 11-902 may come to trial with no chemical test having been administered because the accused refused to submit to it, and that the refusal to submit shall have no adverse effect on the accused in a criminal proceeding.[3]

Courts Art. § 10- 305 gives a defendant the right to select the type of test administered. It mandates — "if facilities or equipment are not available for that test then none may be given." Thus, there may have been no chemical test administered because there were no facilities or equipment for the test selected by an accused.[4] As in the case of a refusal to take the test, this "does not create an inference or presumption concerning either [the defendant's] guilt or innocence by reason of his inability to take the test. The fact of his inability to take a test is not admissible in evidence at his trial. . . ." Courts Art. § 10-305.[5]

A test may not have been adminstered because no test was offered or requested by the police officer, despite the provisions of Code, Art. 66½, § 6-205.1 (c). Courts Art. § 10-304 (d) contemplates such an event. Not only is the person tested permitted to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the police officer, but "in the event no test is offered or requested by the police officer, the person may request, and the officer shall have administered, one of the chemical tests provided for in this section." Thus, if the officer has not offered a test and the defendant has not requested a test, none will have been given.

Another circumstance which may preclude the administering of a chemical test is that the specimen was

---

3. Courts Art. § 10-309 (b) declares that the subsection "does not limit the provisions of the vehicle laws regarding the consequences of refusal to submit to a chemical test or tests."

4. Courts Art. § 10-304 (a), (b) and (c) designates the qualifications of those who may give the tests. The equipment used must be approved by the toxicologist of the office of the Chief Medical Examiner of the Department of Postmortem Examiners.

5. Such inability to take a test, however, "may not be considered a refusal to take a test under the vehicle laws." Courts Art. § 10-305.

not timely taken. Courts Art. § 10-303 requires: "The specimen of breath, blood, or urine shall be taken within two hours after the person accused is apprehended." It appears that if a chemical analysis is made from a specimen taken more than two hours after the person is apprehended, evidence thereof may be excluded at the criminal trial. Courts Art. § 10-309 (a) contains the provision: "Evidence of chemical analysis is not admissible if obtained contrary to [the provisions of subtitle 3, Title 10 of the Courts Art.]."

In the light of these provisions, we are convinced that the Legislature did not intend that evidence of the alcoholic content of a person's body, obtained through the prescribed chemical tests for intoxication, be a prerequisite of conviction for violation of the crime created by Art. $66^{1}/_{2}$, § 11-902. Had we any doubt, it would be removed by Courts Art. § 10-308:

> "The evidence of the chemical analysis does not limit the introduction of other evidence bearing upon whether the defendant was in an intoxicated condition, under the influence of intoxicating liquor, or his driving ability was impaired by the consumption of alcohol."

If evidence of the chemical analysis does not limit the introduction of other evidence bearing upon whether the defendant was in an intoxicated condition, under the influence of intoxicating liquor, or his driving ability was impaired by the consumption of alcohol, patently, reasonably and logically, such other evidence may be introduced when there is no evidence of a chemical analysis. To adopt a contrary view would be unreasonable and inconsistent with common sense. See *Height v. State*, 225 Md. 251, 259 (1961); *Nooe v. City of Baltimore*, 28 Md. App. 348, 355 (1975). A person accused of committing the offenses proscribed by Code, Art. $66^{1}/_{2}$, § 11-902 could completely thwart any prosecution by refusing to submit to one of the prescribed tests.

We conclude that a person may be convicted of driving a vehicle while in an intoxicated condition or while his driving

ability was impaired by the consumption of alcohol in the absence of evidence establishing the alcoholic content of his body according to chemical analysis made pursuant to tests prescribed by statute. To put it another way, the introduction of evidence with respect to the alcoholic content in the accused's body, as shown upon chemical analysis through tests pursuant to Courts Art. §§ 10-302 through 10-309, is not a prerequisite to a conviction of the crimes proscribed by Art. 66¹/₂, § 11-902 (a) and (b). Conviction may be had on any competent evidence legally sufficient to establish the *corpus delicti* of the crimes and the criminal agency of the accused.

## THE CASES *SUB JUDICE*

*Major v. State, No. 998, September Term, 1975*

On 2 December 1974 John H. Major, Jr. was issued four summonses charging him respectively with operating a motor vehicle while intoxicated by the consumption of an alcoholic beverage, with operating a motor vehicle when his license was "refused, canceled, surrendered or revoked", with "failing to stop after a property damage accident", and with failure to use reasonable care to prevent an accident. In the District Court he demanded a jury trial. The cases were transferred to the Criminal Court of Baltimore where he was convicted of the first three offenses at a bench trial on 1 October 1975. He was sentenced to a total of two years [6] and appealed. He attacks only the judgment rendered upon his conviction of operating a motor vehicle while intoxicated.

The State's case consisted of a stipulation as to what certain witnesses would testify were they present and two exhibits admitted without objection — Major's driving record and the arresting officer's certification, on a form designated as DR 15, of Major's refusal to submit to a chemical test. The officer, responding to an accident, saw Major in physical control of a motor vehicle which had been

---

6. The penalties upon conviction of misdemeanors in violation of the vehicle laws are set out in Art. 66¹/₂, § 17-101. See Wilson v. State, 21 Md. App. 557 (1974).

involved in an accident with another vehicle. Major had left the actual scene. According to the officer, Major had a strong odor of alcohol on his breath, his clothes were mussed, his attitude was indifferent and he staggered when he walked. He had no valid Maryland operator's license. The officer requested that Major submit to a breathalyzer test. The DR 15 form gave as the reasonable grounds for the officer's belief that Major was in violation of Art. 66½, § 11-902 (a) or (b): "Odor of alcohol about his breath, staggering, involved in accident, left scene." The form originally indicated that Major desired "to take a chemical test to determine the alcoholic content of [his] blood." Under the heading, "If consent given, which test · was administered", "urine" is denoted. The check mark indicating that Major consented to take the test, however, is crossed out and the word "refused" is written next to it. According to the stipulation, Major was taken to the breathalyzer room, where "the performance test" was administered by the chemist, "which would indicate the balance was wobbling, walk was stumbling, turning hesitant, finger to nose test he completely missed, on the ability to understand instructions it is indicated fair. He could have gotten good or poor. The officer who administered the test on remarks stated the subject refused to blow into the machine because 'I had been drinking all weekend and I don't want to put all of that stuff in the machine'."

Major testified in his own behalf. He said he had driven from his job in Washington about 10 or 10:30 a.m. in a vehicle which was in his name but which he did not own. About 1:30 p.m. he drove from "Smallwood to the east side" to get a hair cut. As he pulled away from the barber shop he struck another car. He tried to catch the other car but could not because the fender on his car was bent in. He pulled to the side and a police officer came up. He told the officer what happened. The officer asked if he had been drinking. The transcript reads:

"A. . . . I told him no. He said, well, you have a

drinking problem. I said yes. I said I am an alcoholic but my being an alcoholic doesn't mean that I drink.

Q. Did he ask you to take a breathalyzer test?

A. He asked me to take a breathalyzer test.

Q. What did you tell him?

A. I refused.

Q. Did you tell him you would take any test at all?

A. I told him I would take a urine test or blood test.

Q. Did he agree to that?

A. He did. He told me, he say, I would have to pay $10.00 and he would have to take me to City Hospital.

Q. Did you do that?

A. I pulled out the money. I said, well, I will pay it.

Q. Did he ever take you to City Hospital?

A. No, he say he didn't have time.

Q. Did he take you to where you blow into the balloon?

A. Yeah, that is where I was at first.

Q. Did you blow into the balloon?

A. No, I didn't.

Q. Why didn't you blow in the balloon?

A. Because I have been stopped several times and all of those times I have been drinking and every time I blow in the balloon the thing comes up and say I be drinking.

Q. Did you tell him, sir, that you had been drinking all weekend?

A. No, I didn't.

Q. And you didn't want to put that stuff in the balloon?

A. No, I didn't.

Q. Had you been drinking when you were stopped?

A. I hadn't been drinking. I was ordered by the

court to attend the A.A. I completed that course Your Honor and on my own I joined another course in my neighborhood, 5600 block of the Alameda, the Church of Christ, where we have a meeting every Sunday night. I had a letter from my sponsor to bring to the court but at the time I was trying to pay this attorney, Mr. Goodman, off, I took the letter and gave it to him, during this time things got slacked and I didn't have the money to finish paying him."

Major admitted driving the car, and that he did not have a Maryland license. On cross-examination he denied that he had been drinking, that he staggered — "I limps at times. I don't have all my toes" — and that he took any tests. He admitted that his Maryland license had been revoked twice and that he had been found guilty of driving while intoxicated "about three, four, five" times. He explained why he refused to take the breathalyzer test. It always showed he had been drinking because the odor of alcohol clung to his dentures — "some old plaster . . . I got when I was in the Korean conflict."

The court rendered its decision:

"The verdict is guilty of intoxicated driving, failing to stop after an accident, and guilty of driving with his license revoked or suspended. I will not consider the other charge. I will find him not guilty on that."

In imposing sentence the court observed:

"Well, Mr. Major, I don't know when I have ever seen a worse record. You really are a menace on the road. Honestly, it is a wonder you haven't killed people and killed yourself. You have had your license revoked six times. You have been found guilty of driving while intoxicated four or five times."

The only question Major presents on appeal is: "Did the

trial judge err in finding [him] guilty of driving while intoxicated in the absence of the statutorily required scientific evidence?"

We have determined that the "scientific evidence" is not required. A person may be convicted of driving a vehicle while intoxicated in the absence of evidence as to the alcoholic content in his body. Here, the evidence before the court, as the trier of fact, was clearly sufficient in law to sustain the conviction. *Williams v. State*, 5 Md. App. 450, 459 (1968). Therefore, the court was not clearly erroneous in its judgment on the evidence, and we may not set it aside. Rule 1086.

Major's point is that under the circumstances there *should* have been evidence with respect to the alcoholic content in his body. Although, he argues, when the officer requested he submit to a test as required by law, he refused to take the breathalyzer test, he agreed to submit to the blood or urine test. He had the right, as we have indicated, to select the test to be performed on him, but he was "transported to the breathalyzer room", the officer saying, according to Major, that he did not have time to take Major to City Hospital. The statute provides that if facilities or equipment for the test selected by an accused are not available, then none may be given. We think it a reasonable inference from Major's testimony that facilities and equipment to take the test Major selected were not available at the police station but were available at City Hospital, and that the assertion by the officer that he did not have time to go there was made in contemplation of the requirement that the required specimen be taken within two hours after the person accused is apprehended. In any event, no sanction is spelled out in the statute for failure to administer a test.[7] Although we in no way condone an arbitrary refusal by a police officer to have a test selected by an accused administered, which may well be in derogation of due process of law, whatever a proper sanction for such action in such event may be, we do not believe that the remedy here, where there was no

---

7. Of course, if the test selected by an accused is not administered, there can be no administrative penalty invoked for refusal to submit to a test.

demand by the defendant that a test be given, is the acquittal of the defendant when there was other evidence legally sufficient to establish the elements of the offense. The lack of the "scientific evidence" in such circumstance, may go to the weight of the other evidence offered and the credibility of the witnesses offering it.

The judgment against Major under the charge of driving while intoxicated is affirmed because the reasons advanced to reverse it afford no proper reason to do so. The other judgments against him are affirmed because they are not challenged on appeal.

*Flanagan v. State, No. 1030, September Term, 1975*

On 18 June 1975 James William Flanagan was issued a summons charging him with "driving [a motor vehicle] while influenced by alcohol." Apparently on demand of a jury trial in the District Court, the case was transferred to the Criminal Court of Baltimore where he was found guilty at a bench trial of operating a motor vehicle while his driving ability was impaired by the consumption of alcohol. He was fined $500 and costs, and a sentence of one year was imposed and suspended. He was released on probation under the supervision of the Division of Parole and Probation for a period of two years. He appealed.

When the case came on for trial in the Criminal Court of Baltimore, Flanagan offered "a technical not guilty", and waived a jury trial.[8] The State called Officer Gary Beedmy. He testified that on 18 June 1975, about 3:00 p.m., while in a store "making a business check", he was approached by Flanagan who informed the officer that he had been involved in an accident less than a block away. He told the officer that "he was stopped at the stop sign at O'Donnell and Potomac. The stop sign is on Potomac Street. There was another car making a left hand turn. He pulled out and was struck by the other vehicle." There was "a strong odor of

---

8. Defense counsel told the court that "Mr. Flanagan would proceed under a statement of facts." When this was explained to Flanagan and he was asked if he understood, he made no response. Whereupon defense counsel said: "I think rather than proceeding on a statement of facts, we would request a court trial."

alcohol on [Flanagan's] breath. . . . He was staggering as he walked out of the door. He had a hard time. He tripped twice going out the door." The officer and Flanagan went to the scene of the accident. The officer was asked what he observed about Flanagan. "[T]he breath of alcohol was strong, his clothes were disorderly, his attitude was talkative and cockey. He was profane with his language. . . . [His walk was] staggering and speech was confused. . . . He would start saying one thing, talk about the accident, then he would go to a different thing, like the weather. . . . He walked by himself, but, like I said, from the inside of the liquor store to the outside, he had tripped quite a few times going outside." On cross-examination the officer said that Flanagan did not appear to be nervous or upset "until after I told him he was under arrest for driving while intoxicated."

Flanagan testified in his own behalf. He gave his version of the accident and said that the woman who struck his car was "extremely upset." He went to get the officer to calm her down. He denied using profanity, and said that he did not stagger. He did not recall his speech being confused or talking about one thing and then about another thing. He admitted to drinking four beers about forty-five minutes before the accident but denied being drunk. On cross-examination he said that he had been found guilty twice of driving while his ability was impaired. His operator's license had been suspended three times and was currently suspended. He did not believe that he had a strong odor of alcohol on his breath, "but I work at a brewery [as a lab technician] so I am sure that there was the odor of alcohol on my clothing."

The defense rested. Defense counsel, whose motion for judgment of acquittal made at the close of evidence offered by the State had been denied, said: "That being the defense, I would again renew my motion for judgment of acquittal if I may be heard first very briefly." The transcript reads:

"THE COURT: I intend to find him guilty under B [Art. 66½, § 11-902 (b)] if that is what you want to

argue. The verdict is guilty under B which is driving an automobile while his ability is impaired.

MR. MARCUS [Daniel J. Marcus, Esq., Assistant Public Defender]: All right, Your Honor."

Defense counsel then spoke in mitigation of sentence and Flanagan personally addressed the court. Sentence was imposed. Flanagan appealed.

Flanagan contends that the trial judge erred in finding him guilty of driving while impaired without a showing that he was provided with the statutorily required right to produce scientific evidence. We have determined that "scientific evidence" is not necessary to convict of such crime. The evidence that was adduced, however, was legally sufficient to sustain the conviction. *Williams v. State*, 5 Md. App. 450, 459 (1968). Therefore the court below was not clearly erroneous in its judgment on the evidence, and we may not set it aside. Maryland Rule 1086.

There was no evidence whatsoever adduced concerning a chemical test to determine the alcoholic content in Flanagan's body. We do not know whether a test was in fact administered. If a test was administered, either side was entitled to offer the result in evidence. If Flanagan was offered a test by the officer, and refused to submit to it, the fact of refusal would not have been admissible in evidence. If Flanagan was not offered a test by the officer, but requested one and the officer refused to administer it, Flanagan could have offered that fact in evidence. In short, the narrow issue here raised, decided below by the finding of guilt, is whether the lack of evidence of a chemical test for intoxication renders the evidence insufficient to convict an accused of driving a vehicle while his driving ability is impaired by the consumption of alcohol.

Flanagan also claims that the trial court erred in denying his attorney an opportunity to present argument in support of his motion for judgment of acquittal. We see no such denial. When the court indicated its disposition to find Flanagan guilty on the lesser offense rather than on the crime of driving while intoxicated, it is manifest that

defense counsel was content. Further argument on the motion was clearly waived.

> *As to John H. Major, Jr. v. State, No. 998, September Term, 1975: Judgments Affirmed.*
>
> *As to James William Flanagan v. State, No. 1030, September Term, 1975: Judgment affirmed.*