474 A.2d 898

**STATE of Maryland**

v.

**Robert Buck WERKHEISER.**

**No. 93 Sept. Term, 1983.**

Court of Appeals of Maryland.

May 9, 1984.

Ann E. Singleton, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellant.

Arthur M. Wright, Chestertown (Rasin & Wright, Chestertown, on the brief), for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Retired, Specially Assigned Judge.

COUCH, Judge.

In this instance we are presented with the question whether dismissal is the appropriate sanction, in a criminal case involving driving while intoxicated or under the influence of alcohol, where the provisions of Maryland Code (1977, 1983 Cum.Supp.), Transportation Article, § 16–205.-1(d)(1)(iii),[1] were not complied with. We conclude dismissal not to have been appropriate and therefore reverse.

Pursuant to Maryland Rule 828g, the parties agreed to a Statement of Facts.

On October 22, 1982, appellee, Robert Buck Werkheiser, was involved in a single car accident on State Route 305 in Queen Anne's County, Maryland. Maryland State Trooper Frank Ford investigated the accident. He had reasonable grounds to believe that Werkheiser was driving or attempting to drive while intoxicated or under the influence of alcohol due to the odor of alcohol on Werkheiser and in his car.

Werkheiser was transported to a hospital in Easton for medical treatment for a gash in his head. He was accompanied by Trooper Ford.

Werkheiser was subsequently charged in the Circuit Court for Queen Anne's County with driving or attempting to drive while under the influence of alcohol in violation of § 21–902(b) of the Transportation Article. On June 30, 1983, Werkheiser filed a motion *in limine* seeking dismissal of the charges because of the state's failure to comply with

---

1. Transportation Article, § 16–205.1(d)(1)(iii), states:
 "(d) *Procedure where individual incapable of refusing test.*—(1) If a police officer has reasonable grounds to believe an individual has been driving or attempting to drive a motor vehicle while intoxicated or while under the influence of alcohol, and if the police officer determines the individual is unconscious or otherwise incapable of refusing to take a chemical test for alcohol, the police officer shall:
 \* \* \* \* \* \*
 (iii) If a chemical test for alcohol would not jeopardize the health or well-being of the individual, direct a qualified medical person to withdraw blood for a chemical test for alcohol to determine the alcohol content of the individual's blood."

the terms of Transportation Article, § 16–205.1(d)(1), and obtain a blood chemical test from Werkheiser while he was unconscious. A hearing was held on Werkheiser's motion on July 5, 1983; the parties stipulated to certain facts.

It was stipulated that Werkheiser was 'unconscious or otherwise incapable of refusing to take a chemical test' under § 16–205.1(d)(1). It was further stipulated that blood was not drawn because Trooper Ford was 'not aware that he was required to do so; that he felt that he was doing everything that he was required to do under the law.' Ford would have testified that he contacted his sergeant who told him that 'if the hospital takes a test of his blood as part of treating him, you can later summons that, otherwise, that's the only thing you can do.' It was further stipulated that Trooper Ford 'did not direct a qualified medical person to withdraw blood for a chemical test to determine the alcohol content' of Werkheiser's blood, a procedure which 'would not have jeopardized' his health or well being.

The trial judge observed that the issue was one of first impression in Maryland and ruled that because the state failed to comply with the mandatory requirements of § 16–205.1(d)(1) the state had violated Werkheiser's constitutional right to due process, and that the only appropriate sanction was dismissal of the charging document. In accordance with this ruling, Judge Carter dismissed the charges against Werkheiser on July 5, 1983.

The state poses a single question for our consideration, "Whether dismissal of the charging document was the appropriate sanction for [its] non-compliance with Transportation Article[,] § 16–205.1(d)(1)(iii)."

The state argues that the duty imposed on police officers by this section is not mandatory but, rather, is only directory. Alternatively, the state argues that, in any event, the sanction of dismissal, for non-compliance, was inappropriate. Not surprisingly, the appellee argues that the duty is

mandatory and dismissal is the proper sanction. All parties agree, as they must, that there is no sanction provided for in the statute.

 We agree with the trial court that the use of the word "shall" in this statute imposes a mandatory duty upon police officers. As we have stated repeatedly: "Under settled principles of statutory construction, the word 'shall' is ordinarily presumed to have a mandatory meaning." *State v. Hicks*, 285 Md. 310, 334, 403 A.2d 356, 369 (1979). However, the mandatory nature of the language does not indicate the sanction to be applied for violation of the statute. Therefore, the Court must consider the purpose and policy of the statute in order to determine the appropriate sanction, if any, to be applied. The legislative purpose of this statute will not be advanced by holding dismissal as the appropriate sanction.

The Maryland General Assembly has enacted laws to enhance the ability of prosecutors to deal effectively with the problem of drunk drivers on our state highways. The provisions relating to prosecutions for driving while intoxicated or under the influence of alcohol, and alcohol related accidents, are contained in Maryland Code (1977, 1983 Cum. Supp.), Transportation Article, §§ 16–205—205.2 [hereinafter cited as Transp. Art.], as well as Maryland Code (1973, 1980 Repl.Vol., 1983 Cum.Supp.), Courts & Judicial Proceedings, §§ 10–302—309 [hereinafter cited as Courts Art.].[2] Because a blood alcohol test is a widely accepted method of proof in prosecutions for alcohol related offenses, and because of drivers' resistance to such tests, states have adopted "implied consent" laws. Annot. 72 A.L.R.3d 325. The aforementioned statutes contain Maryland's "implied

---

**2.** Appellant refers to the 1982 version of these statutes. Because the provision relevant to this appeal is not affected by the 1983 amendments, all references in this opinion will be to the most recent statutes.

consent" provisions.[3]

The Transp. Art., § 16–205.1(a), provides:

*"Implied consent to chemical test.*—Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a chemical test to determine the alcohol content of his blood if he should be detained on suspicion of driving or attempting to drive while intoxicated or while under the influence of alcohol."

However, the test is not compulsory and under certain circumstances a driver may refuse. Courts Art., § 10–309; Transp. Art., § 16–205.1(b). As a consequence of refusing to submit to a chemical test, the driver is subject to administrative sanctions. *Id.* The driver is to be advised of these administrative penalties by the detaining officer. Transp. Art., § 16–205.1(b).

In a case, such as the one before this Court, where the driver is unconscious, the police have authority to direct that the test be administered. Courts Art., § 10–305(b); Transp. Art., § 16–205.1(d)(1)(iii). The statutes permit the test to be administered by appropriate medical personnel because the driver is deemed not to have withdrawn his consent. Subsection (d)(2) underscores that the unique feature of (d)(1)(iii) is the continuing implied consent while the driver is unconscious, as it provides that an individual who "regains consciousness or otherwise becomes capable of refusing" the test, before it is administered, may then refuse the test, Transp. Art., § 16–205.1(d)(2), unless subsection (c) is applicable, in which case the chemical test is required.[4] Those persons involved in an accident resulting

---

3. For a complete discussion of the legislative history of these statutes see *State v. Moon,* 291 Md. 463, 436 A.2d 420 (1981), and *State v. Loscomb,* 291 Md. 424, 435 A.2d 764 (1981).

4. Transp. Art., § 16–205.1(c), provides:

in the death of another are not given the option of refusing to submit to testing.

The statutory scheme, as set forth, illustrates that the particular section at issue here, § 16–205.1(d), was enacted to ensure that an injured driver would receive immediate medical treatment; [5] and to permit a chemical blood test in the absence of actual consent, where the officer had a reasonable basis to suspect the driver was intoxicated or under the influence of alcohol. Stated simply—this section "implies" the necessary consent. *See also* Courts Art., § 10–305(b). The only section that *requires* a chemical test is subsection (c), and that requirement is focused on the driver; the driver is required to submit to a test. Moreover, subsection (d) does not mandate that the test be administered, it merely requires the police officer to "direct" a qualified person to withdraw blood for the purpose of administering the test. There is no requirement that the person so directed act; whereas subsection (c) directs the medical personnel to perform the test where the death of another is involved, and provides liability protection for those who do perform the test. We compare these two

---

"(c) *Circumstances under which chemical test required; administration by medical personnel; liability.*—If a person is involved in a motor vehicle accident that results in the death of another person and the person is detained by a police officer who has reasonable grounds to believe that the person has been driving or attempting to drive while intoxicated or while under the influence of alcohol, the person shall be required to submit to a chemical test, as directed by the officer, of the person's blood or breath to determine the alcohol content of the person's blood. Medical personnel shall complete the test upon the direction of the detaining officer or officers. Any medical personnel who perform any test required by this section are not liable for any civil damages as the result of any act or omission related to such test, not amounting to gross negligence."

**5.** Transp. Art., § 16–205.1(d)(1)(i) and (ii) provide in this regard:
"[I]f the police officer determines the individual is unconscious or otherwise incapable of refusing to take a chemical test for alcohol, the police officer shall:
(i) Obtain prompt medical attention for the individual;
(ii) If necessary, arrange for removal of the individual to a nearby medical facility."

subsections of Transp. Art., § 16–205.1, to illustrate the intended operation of the statute. The legislature has evidenced a strong interest in providing prosecutors with scientific evidence of blood alcohol levels. This is especially true in cases where an accident results in death. However, there is no indication, and the legislature obviously intended none, to suggest that in *any* prosecution for an alcohol related offense the chemical test is a prerequisite to a prosecution.

■ In the instant case the officer had reasonable suspicion that the driver was intoxicated or under the influence of alcohol. The driver was unconscious or incapable of refusing the test. However, the police officer did not direct the medical personnel to administer the test. Appellee contends this is fatal to a prosecution for driving while intoxicated. This may be true insofar as a successful prosecution is concerned, as where the prosecutor has no other relevant evidence to present to a trier of fact, which may result in an acquittal or a finding of not guilty. However, in this case the charges were dismissed improperly.

In the recent past, we have had occasion to consider cases involving the effect of Transp. Art., § 16–205.1, and Courts Art., §§ 10–302—309, on prosecutions for alcohol related automobile accidents. *See State v. Loscomb*, 291 Md. 424, 435 A.2d 764 (1981), and *State v. Moon*, 291 Md. 463, 436 A.2d 420 (1981). Both of these cases, however, were concerned with the admissibility of chemical test results, and not the question presented here. Nevertheless, both cases provide some guidance. For example, both cases make clear that the above referred to statutes are in *pari materia* and are to be read together and harmonized. *Loscomb, supra* [291 Md.] at 435, 435 A.2d at 770. *Moon* also makes clear that sections 10–302 to 10–309 of the Courts Article are concerned with protection of the public. *Id.* [291 Md.] at 477, 436 A.2d at 427. Furthermore, *Loscomb* demonstrates that the exclusionary rule contained in § 10–309 of

the Courts Art. applies if the procedural requirements of § 16–205.1 of the Transp. Art. are not complied with. *Loscomb, supra* [291 Md.] at 435, 435 A.2d at 770. Moreover, we have concluded that the exclusionary rule found in § 10–309 also "applies to prosecutions for violations of Art. 27, § 388 and 388A." *Loscomb, supra* at 431, 435 A.2d at 768. The Courts Art., § 10–309, excludes from evidence the fact that a driver refused to submit to the test. Additionally, Transp. Art., § 16–205.2(c), specifically excludes as evidence the results of a preliminary breath test, as well as the refusal to submit to a preliminary breath test.

Given that the general intent of the applicable legislation is for the protection of the public, had the legislature intended that dismissal of the charges was appropriate for the violation that occurred here, it easily could have so provided; it did, after all, specifically provide for exclusion of evidence of refusal to take a test, and exclusion of the results of a preliminary breath test.

Obviously, we are not concerned here with the exclusionary rule as there is no test result to be admitted or excluded. What we are concerned with is what sanction for an apparent violation of Transp. Art., § 16–205.1(d)(1)(iii), was appropriate. As previously noted, the statute itself contains no sanction. Considering the violation to amount to a denial of due process, the trial judge deemed dismissal appropriate.

A due process issue was considered by the Supreme Court of Colorado in *People v. Culp,* 189 Colo. 76, 537 P.2d 746 (1975) (en banc). The court stated:

"We also hold that due process principles do not require the state to offer a chemical test to the defendant. *State v. Reyna,* [92 Idaho 669, 448 P.2d 762 (1968) ]; *City of Kettering v. Baker,* 40 Ohio App.2d 566, 321 N.E.2d 618 (1974). We quote from *Reyna, supra,* and adopt the Idaho Supreme Court's disposition of this argument:

'... the right to due process of law does not include the right to be given a blood test in all circumstances.

> To hold otherwise would be to transform the accused's right to due process into a power to compel the State to gather in the accused's behalf what might be exculpatory evidence. In this case, the State produced testimonial evidence of intoxication, but it had no obligation to obtain for appellant what he speculates might have been more scientific evidence of sobriety. The State may not suppress evidence, but it need not gather evidence for the accused.' "

*Culp,* 537 P.2d at 748 [quoting *Reyna,* 448 P.2d at 767].

We agree with this reasoning and find the situation analogous to other forms of evidence which the state may not have available for trial. For instance, in *Eley v. State,* 288 Md. 548, 419 A.2d 384 (1980), we were confronted with a criminal case where there was no fingerprint evidence with respect to the escape vehicle. Judge Cole stated for the Court:

> "While it is not incumbent upon the State to produce fingerprint evidence to prove guilt, nevertheless, where a better method of identification may be available and the State offers no explanation whatsoever for its failure to come forward with such evidence, it is not unreasonable to allow the defendant to call attention to its failure to do so."

*Id.* at 554, 419 A.2d at 387. In *Spell v. State,* 49 Md.App. 323, 431 A.2d 752 (1981), the Court of Special Appeals applied our ruling in *Eley* to permit comment by defense counsel that the state had deviated from routine and reliable methods of identification—in that instance, a line-up.

In our view the appropriate remedy available to appellee here would be to allow an inference that had the test been administered, the result thereof would have been favorable to him, to be weighed by the trier of fact along with all the other evidence presented, including the officer's reasons for not directing that the test be administered. To punish the public for a violation, under the circumstances here, by dismissal, when another remedy was available, was

too drastic. Surely the legislature could not have intended that in all cases where there has been a similar violation, regardless of the strength of the state's evidence, that dismissal is appropriate. To so conclude would treat the statute as one for the protection of the accused, a position directly opposite to that taken by the Court in previous cases.

In our view it would do violence to the intent of these statutes to read Transp. Art., § 16–205.1(d)(1)(iii), in isolation and to construe it in a way which would thwart successful prosecution of motorists. It would frustrate the clear legislative intent to provide the state "with an easily administered, reliable method of proving intoxication." *People v. Culp,* 537 P.2d at 747. The consent statute and the presumptions a factfinder can draw from the amount of alcohol in the person's breath or blood, which are contained in § 10–307(b–e) of the Courts Art., clearly reflect an intent to aid in the factfinding process. *Major v. State,* 31 Md. App. 590, 592, 358 A.2d 609, 611, *cert. denied sub nom. Flanagan v. State,* 278 Md. 722 (1976).

In other contexts we have held dismissal is not an appropriate sanction. *State v. Hicks,* 285 Md. 310, 335, 403 A.2d 356, 369 (1979) (violation of Md.Rule 746 by failing to set trial date within 30 days, if case is nevertheless tried within the established time limit); *In Re Dewayne H.,* 290 Md. 401, 430 A.2d 76 (1981) (in juvenile delinquency proceeding disposition hearing was set more than 30 days after the adjudicatory hearing in violation of Rule 915(a)).

■ We are convinced that a chemical analysis is not a prerequisite to a prosecution. Section 10–308 of the Courts Article provides:

"The evidence of the chemical analysis does not limit the introduction of other evidence bearing upon whether the defendant was intoxicated or whether the defendant was driving while under the influence of alcohol."

If this statute does not limit the introduction of other evidence when a chemical analysis *is* introduced into evi-

dence, neither should section (d) of the Transp. Art., § 16–205.1, be read as limiting the introduction of other evidence when a chemical analysis *is not* introduced into evidence.

We agree with the Court of Special Appeals in *Major v. State, supra,* where they reached the same conclusion under an earlier version of the consent statute and Courts Art., § 10–308. "To adopt a contrary view would be unreasonable and inconsistent with common sense." *Major, supra* [31 Md.App.] at 595, 358 A.2d at 613.

■ If a chemical analysis is not offered by the state, the benefit of the presumptions under Courts Art., § 10–307, is lost. The state must must then attempt to meet its burden of proof with other probative evidence. A conviction may be had without a chemical analysis "on any competent evidence legally sufficient to establish the *corpus delicti* of the crimes and the criminal agency of the accused." *Major, supra* at 596, 358 A.2d at 613.

Accordingly, we hold that the trial judge erred in dismissing the indictment.

JUDGMENT OF THE CIRCUIT COURT FOR QUEEN ANNE'S COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS.

COSTS TO BE PAID BY APPELLEE.