622 A.2d 199

**Lewis David JOHNSON**

v.

**STATE of Maryland.**

**No. 942, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

April 2, 1993.

562

Steven Scheinin, Towson, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Joseph I. Cassily, State's Atty. for Harford County of Bel Air, on the brief), for appellee.

Argued before BLOOM, WENNER and DAVIS, JJ.

DAVIS, Judge.

■ This is an appeal from a pre-trial order denying a Motion to Dismiss on the ground of double jeopardy. Lewis David Johnson, appellant, was charged in the District Court of Maryland for Harford County with driving while intoxicated, driving while under the influence of alcohol, failure to drive within a single lane, and violation of license restrictions. Pursuant to appellant's prayer for a jury trial, the case was removed to the Circuit Court for Harford County. A Motion to Dismiss the charges of driving while intoxicated and driving while under the influence of alcohol was made by appellant on the ground of double jeopardy. A hearing on the motion was held on April 2, 1992 before the Honorable Cypert O. Whitfill. On May 29, 1992, the court denied the motion in a Memorandum Opinion. A Notice of Appeal from the denial was filed on June 19, 1992.[1]

Appellant presents the following question for our review:

---

1. An immediate appeal may be taken from a pre-trial order, denying a motion to dismiss on the ground of double jeopardy. *Bowling v. State*, 298 Md. 396, 401 n. 4, 470 A.2d 797 (1984).

Whether a conviction for driving while intoxicated and under the influence of alcohol pursuant to Md.Transp. Code Ann. [TR] § 21–902 following a mandatory suspension of a driver's license pursuant to TR § 16–205.1 constitutes double jeopardy.

For the reasons set forth herein, we shall affirm the denial of appellant's Motion to Dismiss and shall remand the case for trial.

## FACTS

At the hearing on the Motion to Dismiss, Corporal Henry Trabert of the Aberdeen Police Department testified that on November 3, 1990 at about 9:57 p.m. the Department received an anonymous call that a drunk driver was operating a tan Buick in the area of a 7–11 store on Bush Chapel Road in Aberdeen. The officer went to the area and around 10:10 p.m. observed appellant's vehicle leaving the store's parking lot. Trabert followed the vehicle and "observed the vehicle cross the solid double center line twice. The second time the vehicle crossed the center line, half of the vehicle was in the northbound lane."

Trabert stopped the vehicle and asked appellant for his license and registration. At that time, the officer "observed the smell of an alcoholic beverage coming from his breath. He also had red, glassy eyes." Appellant was then asked to exit the vehicle to perform three field sobriety tests: recitation of the alphabet, finger to nose, and walk a straight line. Appellant stated he could not recite the alphabet because he had never learned it, was only able to touch his finger, according to Trabert, "to the area between his nose and upper lip," and stated he could not walk a straight line because "he had injured his right leg." Following the tests, the officer checked appellant's license through the Motor Vehicle Administration and found appellant in violation of a court-ordered license restriction, directing him not to drive or attempt to drive a motor vehicle with

alcohol in his blood. Appellant was then placed under arrest.

Pursuant to TR § 16–205.1, appellant was advised of his right to take or refuse a breathalyzer test and the possible sanctions based on his decision. Appellant elected to take the test. The parties stipulated at the motion's hearing that the test revealed appellant's alcohol concentration to be 0.12 percent. Appellant's driver's license was then confiscated, and he was issued a temporary driver's license.

Appellant was charged by the police officer with driving while intoxicated and/or under the influence of alcohol, driving with alcohol in his blood in violation of a court-ordered license restriction, and failure to drive in a single lane. These offenses are set forth in TR §§ 21–902(a) and (b), 16–113(g) and 21–309(b), respectively.

On December 27, 1990 a hearing was conducted before an Administrative Law Judge in compliance with Md.State Gov't Code Ann. §§ 10–201 through 10–214 inclusive and TR §§ 12–202 through 12–208 inclusive. The judge determined that the arresting officer had "reasonable cause" to stop appellant. The judge also determined that appellant was employed, "does not drive in [the] course of employment," and lacks "public transportation to place of employment." The judge then concluded that appellant was subject to the provisions of TR § 16–205.1 and issued appellant a "restricted license for employment purposes only for 60 days."

On January 28, 1991 appellant appeared on the three charges in the District Court of Maryland for Harford County, at which time a jury trial was prayed, and the case was removed to the Circuit Court for Harford County.

## LEGAL ANALYSIS

Appellant contends that the State's attempt to prosecute him for driving while intoxicated following the suspension of his license at an administrative hearing constitutes multiple punishment for the same offense and violates the prohi-

bition against double jeopardy as discussed in *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). The State counters that the administrative hearing did not place appellant in jeopardy, a necessary prerequisite of double jeopardy. The State argues that the hearing was merely a civil proceeding and that there is "no constitutional or common law double jeopardy concern raised by the State's prosecuting [appellant] on the pending traffic charges."

 "The prohibition against double jeopardy, applicable in Maryland both as a common law principle and under the Fifth Amendment to the United States Constitution, prohibits successive prosecutions for the same offense as well as multiple punishment for the same offense." *Parojinog v. State*, 282 Md. 256, 260, 384 A.2d 86 (1978), citing *Newton v. State*, 280 Md. 260, 263–64, 373 A.2d 262 (1977). Specifically, ."[t]he Double Jeopardy Clause of the Fifth Amendment protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Randall Book Corp. v. State*, 316 Md. 315, 323, 558 A.2d 715 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Federal double jeopardy principles are controlling in determining whether a defendant has been placed twice in jeopardy in violation of the federal Constitution. *Newton*, 280 Md. at 263, 373 A.2d 262.

It is undisputed that the first two protections under the Double Jeopardy Clause are inapplicable to the instant appeal. Appellant is not facing a second prosecution after a prior conviction or acquittal. Rather, we are faced with the third protection under the provision—whether appellant is being exposed to multiple punishment. *See United States v. Sanchez–Escareno*, 950 F.2d 193, 198 (5th Cir.1991).

"Historically, the prohibition against multiple punishments was thought to arise only in criminal cases." *Id.* "It was generally recognized that the government has both an

established right to impose criminal punishment and to extract civil damages. Hence, earlier cases noted this distinction and, for various reasons, refused to figure civil penalties into the double jeopardy equation." *Id.; see Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938) (Congress may impose criminal and civil sanctions and since sanction imposed was civil, double jeopardy was inapplicable).

The decision in the recent Supreme Court case, *United States v. Halper, supra,* however, has given defense attorneys a new rack on which to hang their double jeopardy hat. In that case, Irwin Halper was convicted of submitting sixty-five false claims to the government for reimbursement of Medicare-covered services in violation of the federal criminal false claims statute, 18 U.S.C. § 287, and was sentenced to two years in prison and fined $5,000. *Halper*, 490 U.S. at 438, 109 S.Ct. at 1896. The Government then brought a claim against Halper under the civil False Claims Act, 31 U.S.C. §§ 3729–3731, seeking civil penalties, the most severe being a $2,000 fine for each false claim filed, for a total statutory penalty of more than $130,000. *Id.* The district court concluded that the penalty under the False Claims Act, in addition to that imposed in the criminal conviction, violated the Double Jeopardy Clause, declaring that "the total amount necessary to make the Government whole bears no rational relation to the $130,000 penalty the Government seeks." *United States v. Halper*, 660 F.Supp. 531, 533 (S.D.N.Y.1987).

On direct appeal, the Supreme Court agreed with the district court, holding that

> under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Halper*, 490 U.S. at 448–49, 109 S.Ct. at 1902. "Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves

the goals of punishment." *Id.* at 448, 109 S.Ct. at 1901–02. The Court then went on to announce what it called the rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as "punishment" in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. We must leave to the trial court the discretion to determine on the basis of such an accounting, the size of the civil sanction the Government may receive without crossing the line between remedy and punishment.

*Id.* at 449–50, 109 S.Ct. at 1902 (footnote omitted). The rule in *Halper* has now been extended to factor civil penalties into the double jeopardy matrix where the civil penalty precedes, as well as follows, criminal proceedings. *See, e.g., United States v. Rogers,* 960 F.2d 1501, 1506 (10th Cir.1992); *Sanchez–Escareno,* 950 F.2d at 200; *Allen v. State,* 91 Md.App. 775, 788, 605 A.2d 994 (1992) (forfeiture proceeding is a civil action and when brought prior or subsequent to criminal proceeding does not involve the Double Jeopardy Clause of the Fifth Amendment or the Maryland common law double jeopardy prohibition).

 ▮ Since the result in *Halper* is reserved for "the rare case," *Rogers,* 960 F.2d at 1507 (several courts have distinguished *Halper* as "the rare case"), we must first determine whether TR § 16–205.1 is civil in nature. "A myriad of tests have been espoused to determine whether a sanction is civil or criminal in nature, but the common thread is the statute's legislative intent and its statutory scheme or effect." *Allen,* 91 Md.App. at 785, 605 A.2d 994.

"[I]f [the statute] is to accomplish 'some other legitimate governmental purpose,' it is likely not punitive or penal, despite the incidental imposition of some disability." *Id.* at 786, 605 A.2d 994, quoting *Anderson v. Dep't of Health and Mental Hygiene,* 64 Md.App. 674, 691, 498 A.2d 679 (1985), *rev'd on other grounds,* 310 Md. 217, 528 A.2d 904 (1987), *cert. denied sub. nom., Maryland v. Anderson,* 485 U.S. 913, 108 S.Ct. 1088, 99 L.Ed.2d 247 (1988).

In *Motor Vehicle Admin. v. Shrader,* 324 Md. 454, 464, 597 A.2d 939 (1991), the Court of Appeals had the opportunity to address the legislative history of TR § 16–205.1:

> In 1989, the General Assembly enacted the administrative per se law recommended by the Task Force [on Drunk and Drugged Driving], rewriting § 16–205.1 of the Transportation Article to allow a person's driver's license to be promptly suspended for suspected drunken driving if the person refused a test for blood alcohol concentration. Ch. 284 of the Acts of 1989. The legislative history of Chapter 284 (House Bill 556) indicates that the General Assembly's desire for swift and certain action against drunk drivers was balanced with concern for the administrative needs of the MVA.

According to a report on House Bill 556 titled "Positive Aspects of Administrative Per Se" and prepared by the Governor's Legislative Office, "[j]urisdictions that have already adopted Administrative Per Se, have found this program is an effective deterrent to drunk driving and reduction in fatal crashes." The report also notes other benefits:

> This bill would assure immediate and certain sanctions by the Administration. Speedy [a]dministrative sanctions would help the offender to recognize the cause and effect relationship between the offense and the sanction which would otherwise be weakened by lengthy delays in the court processes. It takes drunk drivers off the roads and it would save lives.
>
> . . . .

Quick Administrative Hearings could identify an individual who may be a problem drinker and result in alcohol treatments sooner than the delays caused by the court trial e.g. jury prayers, continuances.

Thus the bill appears to have a two-pronged purpose—first, to deter effectively those who would drive drunk, and second to reduce fatalities caused by those drunk drivers who drive while awaiting criminal adjudication.

A statement by Steve Blackstone of the National Transportation Safety Board before the House Judiciary Committee on February 15, 1989 articulated this dual purpose:

> Administrative license revocation is essentially a variation of traditional license suspension or revocation. Because these license actions are known to be effective in reducing both crashes and violations, it is reasonable to believe that administrative revocation likewise will be effective. Furthermore, it meet[s] all three criteria for effective sanctions postulated by drunk driving deterrence theory: it is viewed by drivers as a severe sanction; it can be invoked with certainty; and, it goes into effect shortly after arrest. It has a direct effect on public perceptions. It also has the advantage of being a less costly sanction for society than other countermeasures such as jail sentences.
>
> . . . .
>
> In summary, the effects of the administrative license revocation are twofold—the licenses of dangerous drivers are revoked more quickly, and the certainty of receiving a penalty for drunk driving is dramatically increased.

The Court of Appeals has similarly held that the "general intent" of § 16–205.1 "is for the protection of the public ...," *State v. Werkheiser*, 299 Md. 529, 537, 474 A.2d 898 (1984), and not for protection of the accused. *Id.* at 539, 474 A.2d 898. At the administrative hearing, the standard of proof necessary to find a violation of the section is that of a mere preponderance of the evidence, the ordinary burden for civil cases, rather than the criminal standard of

proof beyond a reasonable doubt. *Bernstein v. Real Estate Comm.*, 221 Md. 221, 232, 156 A.2d 657 (1959), *reh'g denied*, 364 U.S. 855, 81 S.Ct. 35, 5 L.Ed.2d 79 (1960); *see Allen*, 91 Md.App. at 786, 605 A.2d 994 (burden of proof for forfeiture action is preponderance of the evidence).

In addition, § 16–205.1(f)(8)(i) states that the administrative judge "shall suspend the driver's license or privilege to drive of the person charged" if the facts show that

1. The police officer who stopped or detained the person had reasonable grounds to believe the person was driving or attempting to drive while intoxicated, while under the influence of alcohol ...

. . . . .

4. ... B. [and a] test to determine alcohol concentration was taken and the test result indicated an alcohol concentration of 0.10 or more at the time of testing.

In *Allen*, we noted that the statutory scheme of Md.Ann. Code art. 27, § 297(b)(4) (1992), for the forfeiture of property, was civil in nature, in part because the statute's mandate had to be obeyed, as opposed to a statute authorizing criminal punishment "that can be invoked at the discretion of the trial judge." *Allen*, 91 Md.App. at 787, 605 A.2d 994, quoting *State v. One 1967 Ford Mustang*, 266 Md. 275, 278, 292 A.2d 64 (1972). Under § 16–205.1, the administrative judge similarly lacks any discretion. The driver's license of the person charged must be suspended if the facts show the person tested for a blood alcohol concentration of 0.10 percent or higher. The "Bill Analysis" of House Bill 556 expressly notes that, under previous law, "suspension and revocation of a driver's license and vehicle registration [was] discretionary, not mandatory."[2]

---

**2.** The "Bill Analysis" for House Bill 556 also notes that, if the hearing officer finds that the arresting officer had reasonable grounds to stop a motorist, there was evidence of alcohol consumption, the officer advised the motorist of all potential sanctions before administering a chemical test, and the motorist refused the test or tested over 0.10 blood alcohol concentration, "the MVA *must* suspend the driver's license or privilege to drive" (emphasis added). Once the determina-

Of greater significance, the "Bill Analysis" for House Bill 556 indicates an intention to keep the bill's sanctions separate from any possible criminal penalties.

> The bill authorizes the imposition of further administrative sanctions if a person is convicted of violating other Maryland Vehicle Laws. The facts determined in an administrative per se hearing are independent of the determination of the same or similar facts in a criminal proceeding, and the disposition of a criminal proceeding does not affect an administrative per se suspension imposed under this bill.

This stated intention was codified in what is now TR 16–205.1(j) and (k).

■ We therefore find that the hearing before the Motor Vehicle Administration was civil in nature. The purpose of § 16–205.1 is to protect other drivers on the road from those who would drive while intoxicated and to deter those who would otherwise decide to drive drunk. While the statute is also aimed at sanctioning the offending driver, that is not its primary purpose. Moreover, the mere fact that the suspension of driving privileges may carry the "sting of punishment" is immaterial. "[C]ases have acknowledged that ... even remedial sanctions carry the sting of punishment." *Allen*, 91 Md.App. at 788, 605 A.2d 994, quoting *Halper*, 490 U.S. at 447, n. 7, 109 S.Ct. at 1901, n. 7.

■ Driving on the roads of this State is also not a right, but a privilege. The Motor Vehicle Administration (MVA)

---

tion has been made that the driver's license must be suspended, however, the Administrator, pursuant to § 16–205.1(m), "may modify a suspension under this section or issue a restrictive license" under certain circumstances. One such circumstance is where the Administrator "finds that the licensee has no alternate means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired." § 16–205.1(m)(3). In the case *sub judice*, the administrative law judge found that appellant lacked public transportation to his place of employment and issued a restricted license for employment purposes only, a proper application of subsection (m)(3).

has exclusive jurisdiction over the issuance of licenses and "[w]hat MVA giveth, MVA may taketh away; but only for specific statutorily prescribed reasons and only in accordance with statutorily prescribed procedures and limitations." *In re David K.,* 48 Md.App. 714, 723, 429 A.2d 313 (1981). "[R]evocation of privileges voluntarily granted is 'characteristically free of the punitive criminal element.'" *Emory v. Texas State Bd. of Medical Examiners,* 748 F.2d 1023, 1026 (5th Cir.1984), quoting *Helvering,* 303 U.S. at 399 and n. 2, 58 S.Ct. at 633 and n. 2 (medical license revocation proceedings are highly penal in sense that valuable rights are at stake, but despite sanction's severity, its character is remedial); *see Showery v. Samaniego,* 814 F.2d 200, 203 (5th Cir.1987) (even though alleged basis for appellate bond revocation is commission of a subsequent offense, the proceedings are not designed to obtain a conviction for violation of that offense but are designed to assess the propriety of allowing a defendant who has already been convicted and sentenced on a separate charge to remain free on bond; such proceedings are not "essentially criminal"). Appellant was deprived of a valuable right when the administrative judge issued him a restricted license. He was not, however, subject to criminal punishment for the same offense under the Double Jeopardy Clause. *See Emory,* 748 F.2d at 1026.

We also believe that the Supreme Court's holding in *Halper* has no effect on our decision. On its face, *Halper* clearly applies to instances where the government attempts to extract from a person who has committed a punishable act, preceded or followed by a criminal prosecution, a monetary penalty "related to the goal of making the Government whole." *Halper,* 490 U.S. at 451, 109 S.Ct. at 1903. The case at bar does not fit the strictures of such a "rare case." *Id.* at 449, 109 S.Ct. at 1902. The State did not seek, nor was appellant subject to, an excessive fine at the administrative hearing. Appellant was merely deprived of some driving privileges for a two-month period. We believe, then, that *Halper* leaves undisturbed cases, such as the one at bar, that have found the revocation of voluntarily grant-

ed privileges to be civil in nature, not punitive, and merely remedial.

Appellant laments that "[o]ther than incarceration, no punishment handed down by any court is greater than denying to a person who relies on his automobile the use of that automobile by taking away his privilege to drive." While appellant may be subjected to the incidental imposition of some disability as a result of the administrative proceeding, we do not believe that the MVA sanction handed down in this case rose to the level of punishment or had the punitive elements envisioned by the Supreme Court in *Halper.*

ORDER DENYING MOTION TO DISMISS AFFIRMED; CASE REMANDED FOR A TRIAL ON THE MERITS.

COSTS TO BE PAID BY APPELLANT.