56 A.3d 223

**Angela Jones KENDALL**

v.

**STATE of Maryland.**

**No. 2, Sept. Term, 2012.**

Court of Appeals of Maryland.

Nov. 27, 2012.

478

Leigh R. Melton (Jesse B. Hammock of Parker, Counts, Melton & Goodman, P.C., Easton, MD), on brief, for petitioner.

Scott G. Patterson, Special Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

McDONALD, J.

The prohibition against double jeopardy, an important protection provided by the federal Constitution and our common law, precludes further prosecution of a defendant on a charge following an acquittal on that charge. That protection is triggered not only by a properly-labeled "acquittal" but also by a "ruling of the judge, whatever its label, [that] actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged."[1]

---

1. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (Brennan, J.).

Applying the principle that the substance of a decision controls for double jeopardy purposes, our Court has held that a putative "dismissal" of charges was in substance an acquittal that triggered the protection against double jeopardy.[2] This case presents another variation for application of that principle. The trial judge in the District Court denied a defense motion for judgment of acquittal on three charges against the defendant. The court then terminated the prosecution of those charges for a purely procedural reason—noncompliance with the rule on service of process—that the court made clear was unrelated to guilt or innocence but recorded its action on the docket sheet as "NG"—*i.e.,* "not guilty"—a label that seemingly denotes an acquittal. This case raises the question whether the protection against double jeopardy precludes the State from pursuing an appeal of that decision.

The Circuit Court for Talbot County held that, in these circumstances, the trial court's action was tantamount to a preliminary motion to dismiss and that the State could therefore appeal the trial court's decision concerning service of process. We agree with the Circuit Court—and with the courts in other jurisdictions that have confronted similar situations—that a mis-labeled dismissal of charges for a purely procedural reason unrelated to guilt or innocence does not trigger the protection against double jeopardy.

### Background

On March 28, 2011, Angela Jones Kendall was charged with driving under the influence of alcohol in violation of Maryland Code, Transportation Article ("TR"), § 21–902(a)(1); driving or attempting to drive a vehicle while impaired by alcohol, in violation of TR § 21–902(b)(1); driving or attempting to drive a vehicle while impaired by drugs or alcohol and drugs, in violation of TR § 21–902(c)(1); and failure to control vehicle speed to avoid a collision, in violation of TR § 21–801(b). The case came to trial in the District Court of Maryland sitting in Talbot County, on June 1, 2011. Ms. Kendall entered a plea

---

2. *State v. Taylor,* 371 Md. 617, 810 A.2d 964 (2002).

of "not guilty" on all charges and elected to have the charges tried by the District Court in a bench trial.

The State called five witnesses. After the State rested its case, defense counsel made a "motion for judgment," arguing that the investigating police officer had failed to obtain a blood sample from the defendant to determine her blood alcohol concentration following the arrest in accordance with Maryland Code, Courts & Judicial Proceedings Article ("CJ") § 10–305.[3] As an additional ground, defense counsel argued that the defendant had not been properly served with the charges as required by Maryland Rule 4–212(h), which provides that "[t]he person issuing a citation, other than for a parking violation, shall serve it upon the defendant at the time of its issuance."

The trial judge agreed that the officer had failed to comply with CJ § 10–305 and granted the defense motion on that ground as to the charge of driving while under the influence of alcohol.[4] The court denied the defense motion with respect to that ground as to the remaining three charges. After denying the motion, the court expressed a willingness to discuss case law on the service of process issue. There followed a discussion between the court and counsel about an appellate decision that construed the rule governing service of criminal citations, and the court permitted the State to recall a police officer to testify briefly about how he served the citations that commenced the prosecution. The officer testified that he had given the citations to Ms. Kendall's mother, not Ms. Kendall. There was no testimony as to the substance or the merits of the charges in the citations.

---

**3.** CJ § 10–305 requires that a blood test be used to determine the defendant's blood alcohol concentration in certain circumstances.

**4.** The trial court apparently also relied upon *State v. Werkheiser,* 299 Md. 529, 474 A.2d 898 (1984), which held an officer's failure to obtain a blood sample from the defendant in the circumstances of that case allowed an inference that the results of a blood alcohol test would have been favorable to the defendant. In oral argument before this Court, the State asserted the judge had misapplied *Werkheiser* in granting the defense motion, although the State had not appealed that decision.

After the testimony, the trial judge heard additional argument from counsel as to the adequacy of the service of the citations; none of that argument concerned Ms. Kendall's guilt or innocence of the charges. At the conclusion of the argument, the following colloquy took place:

THE COURT: I'm going to grant the motion.

[PROSECUTOR]: I would note, just for the record, Your Honor, that Judge Moylan addresses that exact same rule [in *Darrikhuma v. State,* 81 Md.App. 560, 568 A.2d 1150 (1990) ].[5]

THE COURT: I understand that but I'm looking at, I read the rule and it says "shall." And the officer is there, Ms. Kendall is there. It's not a situation where she is unconscious or undergoing surgery, she's in fact, he's standing out in the hall and she is in a room. And instead of going in and serving her, he hands it to her mother. And I don't think that's what the rule contemplates. . . .

*[the trial court then referred to the* Darrikhuma *case and the practice of other officers serving citations in hospitals in other cases]*

. . . In this case she was there, he was there, and he served somebody else and that's not what the rule says.

[PROSECUTOR]: I understand.

THE COURT: So I think that he, the rule in this case was not complied with.

[PROSECUTOR]: For the record to entertain that motion as a preliminary motion to dismiss?

THE COURT: Maybe, yeah.

[PROSECUTOR]: Thank you. Nothing further.

THE COURT: I'm going to grant this motion based upon, I think that this is one of those situations where although

---

**5.** Although Judge Moylan was the senior member of the panel that decided the *Darrikhuma* case and the trial court and counsel appeared to refer to him in their discussion of the case, the author of the opinion was actually Judge Cathell, who was then a judge on the Court of Special Appeals.

Judge Moylan has an analysis I think the facts in this case fly directly in the face of the requirements of the rule.

[PROSECUTOR]: Yes, Your Honor.

THE COURT: And there is no justification for not complying.

At the same time that he rendered his decision on the defense motion, the trial judge completed and signed a docket sheet for each charge.[6] The docket sheets offer the following choices to record a disposition: "G" (guilty), "NG" (not guilty), "PBJ" (probation before judgment), "Dismissed," "Merged," "ABD" (abated by death), "NCR" (not criminally responsible), "NC" (*nolo contendere*), and "JA" (judgment of acquittal). The trial judge recorded "NG" as to each charge and, in that regard, did not differentiate his disposition of the driving while intoxicated charge for non-compliance with CJ § 10–305 from his termination of the other three charges for faulty service of process.

The State subsequently noted an appeal to the Circuit Court for Talbot County with respect to the termination of the prosecution of the three charges for improper service, characterizing the trial court's action as a "dismissal."[7] Ms. Kendall moved to dismiss the appeal, arguing that the District Court action was an acquittal on those charges and that the State's action violated her constitutional and common law protections against double jeopardy.[8]

---

**6.** We understand that docket sheets are used to input information into the District Court's electronic case record database.

**7.** Under CJ § 12–401(b), the State may appeal to the circuit court a final judgment in a criminal case in the District Court "granting a motion to dismiss, or quashing or dismissing a charging document." The State did not seek to appeal the termination of the prosecution on the charge of driving while under the influence of alcohol and concedes that further prosecution of that charge is barred by the prohibition against double jeopardy.

**8.** Ms. Kendall also challenged the appeal as untimely, and accused the State of failing to properly transmit the record, not paying related fees,

The Circuit Court held that the District Court had clearly acquitted Ms. Kendall on the first charge of driving while intoxicated—an issue not contested by the State. However, the Circuit Court found that the record was "sufficiently clear" that the trial court had *not* acquitted her of the other three charges. Rather, the Circuit Court held, the trial court's action was equivalent to granting a preliminary motion to dismiss for improper service. The "not guilty" verdicts on the abbreviated docket forms, the Circuit Court held, "were released in error." [9] The Circuit Court therefore denied Ms. Kendall's motion to dismiss the State's appeal on double jeopardy grounds.

On April 20, 2012, we granted Ms. Kendall's petition for certiorari on her double jeopardy claim.[10]

## Discussion

*Double Jeopardy*

The federal Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." United States Constitution, Fifth Amendment.[11] That protection is also a fundamental part of

and acting in bad faith. These arguments were rejected by the Circuit Court and are not at issue here.

9. During oral argument before us, counsel for the State disputed whether the docket sheets had been made part of the record before the Circuit Court. In any event, there appears to be no dispute that the docket sheets presented to this Court are authentic, that the information recorded on them is also reflected in the District Court database, and that they are appropriately considered by this Court. *See Chesek v. Jones,* 406 Md. 446, 456 n. 8, 959 A.2d 795 (2008).

10. A defendant has the right to immediate appellate review of an adverse ruling concerning a double jeopardy claim. *Pulley v. State,* 287 Md. 406, 414, 412 A.2d 1244 (1980).

11. The Double Jeopardy Clause of the Fifth Amendment to the U.S. Constitution is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). There is no prohibition against double jeopardy in the Maryland Constitution. *See* D. Friedman, *The Maryland State Constitu-*

Maryland common law. *See State v. Taylor*, 371 Md. 617, 629–30, 810 A.2d 964 (2002). In a nonjury trial, jeopardy ordinarily attaches when the first witness is sworn, *Crist v. Bretz*, 437 U.S. 28, 37 n. 15, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978), although in some circumstances it may attach without the appearance of a witness if the defendant is "subjected to the risk of conviction." *Daff v. State*, 317 Md. 678, 688–89, 566 A.2d 120 (1989) (acquittal following failure of prosecution witnesses to appear for trial). For each offense for which the defendant is thereafter acquitted, both the federal Constitution and State common law prohibit a second prosecution. *See Benton v. Maryland*, 395 U.S. 784, 796, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) (federal Constitution); *Gianiny v. State*, 320 Md. 337, 342, 577 A.2d 795 (1990) (Maryland common law). "If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair," even if the acquittal was based on an "egregiously erroneous foundation." *United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980); *see also Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962).[12] Nor are double jeopardy protections vulnerable to judicial second thoughts. "[O]nce the trier of fact in a criminal case, whether it be the jury or the judge, intentionally renders a verdict of not guilty, the verdict is final and the defendant cannot later be retried on or found guilty of the same charge." *Pugh v. State*, 271 Md. 701, 706, 319 A.2d 542 (1974) (even though trial judge changed mind after initially finding evidence insufficient on drug

---

*tion: A Reference Guide* (2006) at p. 30. Rather, as explained in the text, a prohibition against double jeopardy is part of Maryland common law.

**12.** We are aware that the Supreme Court recently heard argument in a case concerning the prohibition against double jeopardy in the federal Constitution. *See Michigan v. Evans*, 491 Mich. 1, 810 N.W.2d 535 (2012), *cert. granted*, —— U.S. ——, 132 S.Ct. 2753, 183 L.Ed.2d 614 (2012). That case concerns the application of double jeopardy principles when a trial judge acquits a defendant based on a misunderstanding of the elements of the offense in question. Unlike *Evans*, the issue before us does not turn on the substance of the charged offenses.

charge, further prosecution of defendant on that charge was barred); *Brooks v. State*, 299 Md. 146, 153–54, 472 A.2d 981 (1984) (trial judge could not "reconsider" and submit conspiracy charge to jury after first ruling that evidence was insufficient to establish that offense).

It is also well established that, if a defendant seeks to have a prosecution terminated without any submission to a judge or jury as to the defendant's guilt or innocence of the charges and the court grants that motion, further prosecution is not barred. The critical question is "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (Brennan, J.).

For example, in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the defendant moved, both before and during trial, to dismiss the drug charges against him on the basis of prejudicial pre-indictment delay. The trial court initially denied the motion, but later granted it in the midst of trial. The Government then sought to appeal the dismissal. The defendant asserted that further prosecution was barred on double jeopardy grounds. The Supreme Court held that double jeopardy principles did not bar the Government's appeal and potential future prosecution, as the trial court's action was not in substance an acquittal. The Court reiterated its statement in *Martin Linen* that the label that a trial court attaches to its decision does not determine the significance of that ruling for double jeopardy purposes. 437 U.S. at 96, 98 S.Ct. 2187 ("the trial judge's characterization of his own action cannot control the classification of the action"). The Court identified the critical question: "[W]here the defendant himself seeks to have the trial terminated without any submission to either judge or jury as to his guilt or innocence, an appeal by the Government from his successful effort to do so is not barred . . ." 437 U.S. at 101, 98 S.Ct. 2187.

In applying double jeopardy principles under Maryland common law, this Court has adopted the approach set forth in *Martin Linen* and *Scott*. In *State v. Taylor*, 371 Md. 617, 810 A.2d 964 (2002), this Court considered the consolidated appeals of two cases. In each case the State and the defendants had stipulated to certain facts in connection with pre-trial motions and the trial court had granted, before trial, a defense "motion to dismiss" the charges on the basis that the stipulated facts revealed that the State would be unable to prove an element of the charges. This Court held that the trial courts exceeded the permissible scope of a motion to dismiss by considering the sufficiency of the evidence. In both cases, the grants of the motions to dismiss "substantively constituted judgments of acquittal and therefore must be given effect as such for double jeopardy purposes." 371 Md. at 644, 810 A.2d 964. "Although cloaked in the form of the grant of motions to dismiss, the substance of the trial judges' rulings was to grant judgments of acquittal and so we must treat them for double jeopardy analysis . . . . dismissal of a criminal information or indictment based on an assessment of the sufficiency of the evidence is tantamount to an acquittal." *Id.* at 648–49, 810 A.2d 964. In reaching this conclusion the Court relied on the trial courts' explanations of their rulings, noting how they depended on an evaluation of facts bearing on whether the defendants were guilty of the crimes charged. *Id.* at 652–53, 810 A.2d 964.

*Application of Double Jeopardy Principles*

 The application of double jeopardy principles in this case turns on the nature of the District Court's ruling on the three charges in question. It is abundantly clear, and the parties agree, that if the District Court acquitted Ms. Kendall of the charges against her—even if in error—the State is barred from appealing that decision.[13] But the label "acquit-

---

13. There is no dispute that the District Court acquitted Ms. Kendall of the first of the four charges—driving under the influence of alcohol, in violation of TR § 21–902(a)(1).

tal" does not fit the trial court's action. The record reveals the following sequence of events:

- At the close of the State's case, defense counsel moved "for judgment." In context it appears clear that she was asking for a "judgment of acquittal," as permitted by statute and rule.[14]

- The trial court entertained argument which dealt, in part, with the State's compliance with a statute requiring it to obtain a certain type of evidence (blood sample) in certain circumstances.

- Based on the evidentiary issue, the trial court granted the defense motion as to the driving while intoxicated charge, but *denied* the motion as to the other three charges.

- The court then entertained further discussion of a procedural issue—whether the police officer had properly served the statement of charges. There was no further discussion of the blood test or any other evidentiary matter.

- The court permitted the prosecutor to put on testimony concerning how the police officer physically served the citations; that testimony did not concern the substance of the charges.

- Counsel and the court then discussed the Maryland rule on service of citations and a Court of Special Appeals decision construing that rule. There was no discussion of the substance of the charges or the evidence against Ms. Kendall.

- The trial court then "granted the motion" as to the three remaining charges and entered "NG" on the docket sheets, on the ground that the State had not complied with the rule on service of citations. The court explained that

---

14. A defendant may make a motion for judgment of acquittal at the close of the evidence for the State. Maryland Code, Criminal Procedure Article, § 6–104(a)(1); *see also* Maryland Rule 4–324 (motions for judgment of acquittal).

the basis of its ruling was the presence of the word "shall" in the rule concerning service of process.

- The trial court agreed with the observation of the prosecutor that the "motion" that was being granted as to the three charges was actually a preliminary motion to dismiss and repeated that the basis of its decision was the interpretation of the rule on service of process.

By definition, a motion for judgment of acquittal is based "on the ground that the evidence is insufficient in law to sustain a conviction[.]" Maryland Code, Criminal Procedure Article, § 6–104(a)(1). Here the trial court clearly *denied* the motion as to the three charges to the extent it was based on the sufficiency of the evidence as to those charges. One who reads solely the portion of the record after the court denied the motion for judgment of acquittal as to the three charges would have no idea of the substance of the charges or the evidence in the case—because no mention at all was made of them. In that portion of the record, the court and counsel have turned their attention entirely to the mechanics of service of process in this case, the rule governing service, and an appellate decision concerning the consequences of a failure to comply with that rule. It could not be clearer—even if the trial court had not explicitly said so—that the termination of the prosecution of those three charges was based on a purely procedural ground having nothing to do with Ms. Kendall's guilt or innocence of those charges. This was not "a resolution, correct or not, of some or all of the factual elements of the offense[s] charged." Accordingly, the protection against double jeopardy was not triggered by that ruling.

To be sure, the trial court entered "NG" on the docket sheets for the three charges. Yet it appears that those notations are, at most, the equivalent of a "mis-spoken verdict." *See Pugh v. State*, 271 Md. 701, 706–7, 319 A.2d 542 (1974). The trial court did not utilize either of the more appropriate options on the docket sheets. While the court did not check off "dismissed" on the docket sheets for the three charges in question, it is also notable that the trial court did

not check off "JA" (judgment of acquittal) for the first charge of driving while intoxicated, even though it is plain on the record—and there is no dispute—that the court in fact granted a motion for judgment of acquittal on that charge. Indeed, the trial court appeared to regard "NG" as simply an indication that the case had been terminated in favor of the defendant rather than an indication of the exact nature of decision that it had made.

In contrast to this case are the prior decisions of this Court where it was held that double jeopardy principles precluded further prosecution because a dismissal was based on the insufficiency—or complete lack—of evidence on the charges in case. For example, in *Daff v. State,* 317 Md. 678, 566 A.2d 120 (1989), the prosecution's witnesses failed to appear at the time the case was called for trial because of an unexplained failure of the clerk's office to issue subpoenas for them. The defendant was ready to proceed with the trial, and the circuit court offered to nol pros the charges for the State. When the prosecutor declined that option, the court denied a postponement and entered a finding of not guilty. This Court held that a re-institution of the charges was barred by double jeopardy principles, noting that, even if the trial judge erred in denying the State's request for a postponement, it "would [not] affect the finality of an acquittal thereafter entered on the ground of *insufficiency* of the evidence." 317 Md. at 685, 566 A.2d 120 (emphasis added). *See also Farrell v. State,* 364 Md. 499, 774 A.2d 387 (2001) (relying on *Daff* to hold that the State may not re-institute charges after the State's witnesses failed to appear for trial and a not guilty verdict was entered on the charges).

There are numerous cases from other jurisdictions where state appellate courts have held that a trial court's "judgment of acquittal" or "not guilty" was not in fact an acquittal for double jeopardy purposes because the trial court did not purport to be resolving any factual question relating to the offenses charged. *See, e.g., Connecticut v. Kruelski,* 250 Conn. 1, 737 A.2d 377 (1999) (trial court judgment of acquittal that was based solely on statute of limitations and that did not resolve any element of offense charged did not trigger double

jeopardy); *Hawaii v. Dow*, 72 Haw. 56, 806 P.2d 402 (1991) (following *Martin Linen* and declining to "interpret the judgment of acquittal in a hypertechnical manner, elevating form over substance"); *People v. Williams*, 2000 WL 33407356, 2000 Mich.App. LEXIS 968 (Mich.App.2000); *Petition of the State of New Hampshire (State v. Johanson)*, 156 N.H. 148, 932 A.2d 848 (2007); *North Dakota v. Melin*, 428 N.W.2d 227 (N.D.1988); *Pennsylvania v. McDonough*, 533 Pa. 283, 621 A.2d 569 (1993). Federal appellate courts have similarly applied the principle stated in *Martin Linen* and *Scott. See, e.g., United States v. Council*, 973 F.2d 251, 254 (4th Cir.1992) (when district court granted "judgment of acquittal" as to certain counts at close of prosecution case solely on grounds of discovery violation by government, that ruling was actually a "dismissal" that did not bar retrial of those counts); *United States v. Gonzales*, 617 F.2d 1358, 1362 (9th Cir.1980) ("judgment of acquittal" in the midst of trial was "in substance an order of dismissal" and therefore did not preclude prosecution appeal); *United States v. Appawoo*, 553 F.2d 1242, 1244 (10th Cir.1977) (even though the ruling was labeled a "judgment of acquittal", "the record here demonstrates that the ruling was unrelated to any facts developed by the Government's case"); *see also United States v. Alvarez*, 351 F.3d 126 (4th Cir.2003); *United States v. Mackins*, 32 F.3d 134, 139 (4th Cir.1994).

The Massachusetts Supreme Judicial Court was confronted with a case with facts remarkably similar to those of this case and concluded that the trial court's action did not implicate double jeopardy. In *Commonwealth v. Babb*, 389 Mass. 275, 450 N.E.2d 155 (1983), the defendant was charged with several offenses related to driving under the influence of alcohol. The defendant waived a jury trial on the charges. At the conclusion of the bench trial, defense counsel moved for a "not guilty" determination on the vehicular homicide charges on the ground that the officer who had written the citations had failed to file them with the court within the time period required by a state statute. The trial judge discussed with counsel an applicable state appellate decision concerning the pertinent statute and ultimately concluded that the case

should be concluded in the defendant's favor. While the judge indicated he regarded his action as a "dismissal" of the charges, he wrote "NG" (not guilty) together with his initials on the charging documents.

On appeal, the Massachusetts Supreme Judicial Court first recited the principles derived from *Scott* and *Martin Linen* that whether a trial court's action is an "acquittal" does not depend on the label attached to the ruling but whether that ruling resolved some or all of the factual elements of the crimes charged. 450 N.E.2d at 159. The Supreme Judicial Court found that it was clear that the trial judge had dismissed the charges solely on the basis that the police had failed to comply precisely with the statute on the filing of charging documents and the judge had not made a determination of the defendant's guilt or innocence on those charges. *Id.*[15] The court held that the prosecution appeal was not barred on double jeopardy grounds.[16]

Like *Babb*, this is an unusual case. This is a rare instance in which the record is absolutely clear that the trial court denied a motion for judgment of acquittal on substantive grounds, then immediately thereafter entertained a discussion of a purely procedural matter (service of process) having nothing to do with proof of guilt or innocence, received addi-

---

**15.** In a procedure peculiar to the Massachusetts courts, the trial judge was asked to certify facts concerning his action on the charges. In response to that order, the trial judge indicated that the use of "NG" was in error. While the Massachusetts Supreme Judicial Court relied in part on that report in reaching its holding, it indicated that its conclusions were "supported by the stipulation and the events at trial." *Commonwealth v. Babb*, 389 Mass. 275, 450 N.E.2d 155, 159 (1983).

In the case before us, the District Court's acknowledgment on the record that its ruling was actually the grant of a preliminary motion to dismiss is functionally equivalent to the Massachusetts trial court's admission that the "NG" label was inaccurate.

**16.** In *Babb*, the Massachusetts appellate court reversed the dismissal and remanded the charges for adjudication by the trial court. In this case, the merits of the District Court ruling are not before us, but will be considered by the circuit court on remand. We offer no opinion on that topic. We decide only the appealability of the District Court ruling.

tional evidence on that issue alone, heard legal argument from counsel that concerned that issue alone and did not touch upon evidence concerning guilt or innocence, and explained its ruling based on that issue alone without any reference to evidence relating to the substance of the charges against the defendant.

By contrast, many trial court judgments on putatively procedural matters in criminal cases may be interlaced with facts related to the merits of the charges. Under *Taylor*, such a decision terminating the case in favor of a defendant after jeopardy has attached will likely bar further prosecution under double jeopardy principles. Thus, our holding in this case should not be taken as an invitation to prosecutors to parse every adverse judgment for a procedural aspect to serve as an appellate foothold.

### Conclusion

The District Court's decision to terminate the prosecution of the three charges against Ms. Kendall that are the subject of this appeal was not based on a resolution of "some or all of the factual elements" of the offenses charged. For that reason, the trial court's action did not trigger the protection against double jeopardy. The State may pursue its appeal of that ruling.

JUDGMENT OF THE CIRCUIT COURT FOR TALBOT COUNTY AFFIRMED. COSTS IN THIS COURT TO BE PAID BY THE RESPONDENT.

BELL, C.J., BATTAGLIA, and GREENE, JJ., dissent.

GREENE, J., dissenting, in which BELL, C.J. and BATTAGLIA, J., Join.

I disagree with the majority's conclusion that the State was entitled to appeal the verdicts of acquittal entered by the District Court. It is well established under Maryland common law that, in a criminal trial, once jeopardy attaches and a verdict of acquittal is rendered intentionally, that verdict is final and may not be set aside.[1] *State v. Taylor*, 371 Md. 617,

---

1. Common law protections include barring a second prosecution for the same offense after a verdict of acquittal or *"autrefois acquit." In re*

633, 810 A.2d 964, 973 (2002) (citing *State v. Shields,* 49 Md. 301, 303 (1878)). In the instant case, the District Court judge had jurisdiction over the subject matter and the Petitioner, Angela Jones Kendall. The State presented its evidence and rested its case. In response to defense counsel's motion for "judgment," the trial judge evaluated the evidence presented and "grant[ed] the motion." Later the trial judge checked the "NG" ("Not Guilty") box on the docket sheets for each of the four counts against Petitioner and signed the documents. Accordingly, I would reverse the judgment of the Circuit Court for Talbot County and remand the case to that court to dismiss the State's appeal and affirm the judgment of the District Court.

## I.

On March 29, 2011, Officers Larry Horney and Scott Kakabar responded to a single vehicular accident in St. Michaels, Talbot County. When the Officers arrived at the scene of the accident, they found a car facing downward in a ditch. The Officers testified that when they arrived the vehicle engine was running, the vehicle lights were on, and the car appeared to have struck a mailbox. Petitioner was observed in the driver's seat and was described as "[n]ot kind of responsive" and "disoriented," with "[slurred] speech," and "a faint odor of

*Kevin E.,* 402 Md. 624, 633, 938 A.2d 826, 831 (2008); *Giddins v. State,* 393 Md. 1, 15 n. 4, 899 A.2d 139, 147 n. 4 (2006) (explaining that *"autrefois acquit"* literally means "already acquitted," and that the "successful intersession of the common law plea of autrefois acquit would bar retrial of a defendant after the court has rendered a judgment of acquittal" (citing *State v. Barger,* 242 Md. 616, 618, 220 A.2d 304, 305 (1966); *Farrell v. State,* 364 Md. 499, 506–07, 774 A.2d 387, 391 (2001))).

Maryland's double jeopardy jurisprudence broadly interprets the principle embodied in the plea of *autrefois acquit. State v. Taylor,* 371 Md. 617, 633, 810 A.2d 964, 973 (2002); *Daff v. State,* 317 Md. 678, 684, 566 A.2d 120, 123 (1989). This Court has held consistently that under double jeopardy, an acquittal must stand, even if it is based on a mistake of law including a procedural error, or a mistake of fact. *See Farrell,* 364 Md. at 507–10, 774 A.2d at 391–93; *Block v. State,* 286 Md. 266, 273–74, 407 A.2d 320, 324 (1979); *State v. Shields,* 49 Md. 301, 303 (1878).

an alcoholic beverage coming from her person." [2] One Officer testified that Petitioner told him she had taken Cymbalta,[3] a prescription drug. The Officers contacted paramedics to assist Petitioner and she was taken to Easton Memorial Hospital.

When Petitioner arrived at the hospital, she required assistance getting into her hospital gown. Hospital staff described her as "[v]ery clumsy in her movements" and "not able to stand on her own at all." A physician met with Petitioner, and the physician's assistant noted on an observation sheet that Petitioner, at some point in time, which is unexplained in the record, had suffered seizures, nausea, problems with vision, and vomiting. The observation sheet also indicated that the air bag in Petitioner's car had deployed. The assisting nurse testified that during her interaction with Petitioner, Petitioner said that "she had swerved off the road and into [a] ditch." While at the hospital, Petitioner was scheduled to receive a CT scan of her head. Prior to undergoing the CT scan, Officer Kakabar asked Petitioner to complete the DR–15 form.[4] Peti-

---

**2.** The State's witnesses presented conflicting testimony with regard to Petitioner's behavior at the scene of the accident. For example, Brian Mitcheliche, the paramedic who assisted Petitioner, testified that she "was alert ... orient ... [and] able to answer [ ] questions [asked of her]."

**3.** Cymbalta refers to a type of drug often prescribed to treat depression, anxiety disorder, or muscle pain. The main ingredient in the drug may cause drowsiness or dizziness, and may affect a person's thinking, judgment, or coordination. Other side effects include nausea, vomiting, headache, tiredness, weakness, blurred vision, or confusion. Alcohol may increase the risk of any serious side effects. *See* National Center for Biotechnology Information, *Duloxetine,* United States National Library of Medicine, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000274/ (last updated Jan. 15, 2012). Officer Kakabar testified that when he approached Petitioner, she told him she had taken Cymbalta. Officer Horney testified that when he came in contact with Petitioner, she told him she had taken muscle relaxers.

**4.** The DR–15 is a standardized form explaining a detained driver's rights with regard to Maryland's implied consent law and the administration of a blood alcohol concentration test. The form, "in addition to advising individuals of the consequences of a [blood alcohol] test refusal, sets forth the sanctions for having a blood alcohol concentra-

tioner, however, refused to submit to a breath test. Apparently, at that time, the Officers prepared citations charging Petitioner with various speed, alcohol, and drug related offenses, and served the papers on Petitioner's mother who was present at the hospital. The Officers did not ask hospital staff to administer a blood test for alcohol or drugs.[5] Approximately two to three hours after Petitioner arrived at the hospital she was released to go home.

The relevant trial court proceedings began in the District Court for Talbot County when Petitioner entered a plea of "Not Guilty" to the charges of driving or attempting to drive a vehicle while under the influence of alcohol in violation of Md.Code (1977, 2012 Supp.), § 21–902(a)(1) of the Transportation Article ("TR"); driving or attempting to drive a vehicle while impaired by alcohol, in violation of Md.Code (1977, 2012 Supp.), TR § 21–902(b)(1); driving or attempting to drive a vehicle while impaired by drugs or alcohol and drugs, in violation of Md.Code (1977, 2012 Supp.), TR § 21–902(c)(1); and failure to control vehicle speed on a highway to avoid a collision, in violation of Md.Code (1977, 2009 Repl.Vol.), TR § 21–801(b). The Petitioner waived her right to a jury trial, and elected a bench trial in the District Court. Thereafter, the State called each of its five witnesses, presented the entirety of its evidence, and rested its case.

---

tion in excess of the statutory limit, [and] explains the administrative review process...." *See Motor Vehicle Admin., v. Delawter,* 403 Md. 243, 261–62, 941 A.2d 1067, 1079 (2008) (citations omitted).

5. According to the testifying nurse, blood may have been drawn from the Petitioner by hospital technicians for the purpose of testing Petitioner's alcohol level. The trial transcript reveals, however, that the investigating Officer did not ask hospital staff or Petitioner for a report on Petitioner's blood content or request a blood test. In response to defense counsel's question, "[o]nce [Petitioner] was at the hospital why didn't you ask the hospital to administer a blood test for both alcohol ... [and drugs]?" Officer Kakabar explained that, "[he] just didn't ask." Later in the proceedings, defense counsel asked Officer Kakabar, "[y]ou didn't ask [Petitioner] for blood though did[ ] you?" Officer Kakabar replied, "[n]o." The Officer later explained that he did not know he had to have a blood test under Md.Code (1973, 2006 Repl. Vol.), § 10–305 of the Courts and Judicial Proceedings Article ("CJ").

At the end of the State's case, defense counsel "move[d] for judgment[,]"[6] and advanced two arguments to support the motion. She argued that Petitioner needed medical attention, and that the attending law enforcement officials failed to give her a blood test to determine her blood alcohol concentration in accordance with Maryland Courts and Judicial Proceedings Article ("CJ") § 10–305. This law mandates that in certain circumstances, such as when an individual sustains injuries which require removal to a medical facility, or when an individual is unconscious or otherwise incapable of refusing to take a test to determine alcohol concentration, a blood test must be administered to determine the individual's blood alcohol content. CJ § 10–305(a). Similarly, this Article also requires that "[t]he type of specimen obtained from the defendant for the purpose of a test or tests to determine drug or controlled dangerous substance content shall be a blood specimen." CJ § 10–305(b). Defense counsel cited *State v. Werkheiser*, 299 Md. 529, 474 A.2d 898 (1984), to support her motion for a judgment of acquittal because the State failed to obtain a blood test from Petitioner. *Werkheiser* stands for the proposition that although a chemical analysis is not a prerequisite to a prosecution, in the special circumstances when an individual is otherwise incapable of refusing and cannot withdraw consent to a blood test, the "appropriate remedy available [to a defendant] would be to allow an inference that had the test been administered, the result thereof would have been favorable to [the defendant]." *Werkheiser*, 299 Md. at 538–39, 474 A.2d at 903–04. Defense counsel also advanced an argument about the absence of service of process under Maryland Rule 4–212(h). This rule requires that "[t]he person issuing a citation ... shall serve it upon the defendant at the time of its issuance."

---

6. Although defense counsel did not expressly use the term "motion for judgment of acquittal," no serious argument can be made that defense counsel was not seeking an acquittal based upon the timing of the motion made at the end of the State's case, and that the motion raised deficiencies in the evidence presented by the State.

With the entirety of the evidence before the judge, as well as several arguments advanced by counsel, the judge ruled on the motion for judgment, saying first that, "I'm going to grant the (A)," referring to the motion for judgment of acquittal as to the charge of driving while under the influence of alcohol, § 21–902(a)(1).[7] The State did not contest the court's ruling then, or now, on appeal. The trial judge then explained that he would deny the motion as to the other three charges "**at this stage** at the end of the State's case." (Emphasis added). Following a discussion between the court and counsel concerning the service of process issue,[8] the trial judge ruled, "I'm going to grant the motion." Thereafter, discussion on the service of process issue continued and the State asked the trial judge to "entertain that motion as a preliminary motion to

7. Driving while under the influence of alcohol, TR § 21–902(a)(1), requires proof of driving or attempting to drive a vehicle, and proof that the driver had "a substantial impairment of normal coordination" due to alcohol. *See Meanor v. State*, 364 Md. 511, 518–25, 774 A.2d 394, 398, 401–02 (2001) (explaining that TR § 21–902(a)(1) does not necessarily require proof of any particular blood alcohol content, but requires proof of a substantial impairment of normal coordination). *But see* CJ § 10–307(c) (noting that an alcohol concentration above .05 at the time of testing "may be considered with other competent evidence in determining whether the person was or was not driving while under the influence of alcohol ...") . In the present case, the trial judge did not articulate on the record his reasons for granting the motion as to TR § 21–902(a)(1). He may have granted the motion to acquit Petitioner of the TR § 21–902(a)(1) charge based on evidence that there was no test result concerning her blood alcohol content at the time she was operating a motor vehicle. Alternatively, with regard to the Officer's failure to obtain a blood test under CJ § 10–305, the judge may have relied on *State v. Werkheiser*, 299 Md. at 538, 474 A.2d at 903, in which this Court held that the appropriate remedy for an officer's failure to obtain blood from a defendant, otherwise incapable of refusing a blood test, and have it tested permits an inference that the blood test results would have favored the defendant.

8. The trial judge and counsel discussed a Court of Special Appeals decision, *Darrikhuma v. State*, 81 Md.App. 560, 568 A.2d 1150 (1990), on the subject of service of criminal citations. The judge also allowed the State to recall one of its witnesses to briefly explain how he served the Petitioner with the charges giving rise to this prosecution. The Officer-witness explained that he wrote the citations at the hospital and served them on Petitioner's mother instead of Petitioner because he thought Petitioner was still being treated.

dismiss?" The judge replied, "[m]aybe, yeah[,]" and then repeated that he would "grant the motion based upon, I think that this is one of those situations where although Judge [Moylan] has an analysis I think the facts in this case fly directly in the face of the requirements of the rule." [9] Later, the judge checked the box on the docket sheet for "NG" ("Not Guilty"), and signed his name next to the docket entry for each of the four charges.[10]

Following the entry of the "Not Guilty" verdict for each of the four charges, the State appealed to the Circuit Court for Talbot County. The State argued that the District Court judge did not acquit Petitioner of three of the four charges. Instead, the State maintained, the District Court dismissed the three outstanding charges on the grounds of improper service. In response, Petitioner moved to dismiss the appeal on the basis that the Court granted an acquittal, and double jeopardy barred the State from appealing the verdicts.

Treating the State's appeal as proper, the Circuit Court held that the District Court judge's actions with regard to the three charges did not amount to an acquittal. In ruling for the State, the Circuit Court explained that the trial judge must have interpreted the service issue raised by Petitioner's motion for judgment as a preliminary motion to dismiss for improper service. The Circuit Court also concluded that the "Not Guilty" entries on the docket sheet were "released in

---

**9.** This statement refers back to *Darrikhuma,* and although Judge Moylan was a member of the panel to decide the case, Judge Cathell, who at that time was a judge on the Court of Special Appeals, wrote the opinion.

**10.** There are two reasonable ways to interpret the trial judge's actions. The judge reconsidered his initial denial of the judgment for acquittal on the remaining three charges ("I'm going to deny the other[ ] [motions] at this stage at the end of the State's case"), and then reversed himself, thereby granting the motion. Alternatively, the entry of "NG" on the docket sheet was evidence of a determination of the general issues in the case following a trial on the merits. Under either explanation, we should not attempt to second guess the finality of the trial judge's decision or presume to know all of the reasons for the ruling.

error[,]" because the District Court judge dismissed the remaining counts against Petitioner based upon the motion to dismiss. Subsequently, the Circuit Court denied Petitioner's motion to dismiss the appeal on double jeopardy grounds.

## II.

When the trial judge granted the motion and terminated the proceedings, he had before him the entirety of the evidence presented by the State. This evidence constituted all of the evidence the judge needed to make a judgment on the sufficiency of the State's evidence. The judge further confirmed his intention to acquit by checking "NG" on the docket sheet. On appeal, therefore, we cannot assume, as the majority holds, that the judge intended to dismiss the case on procedural grounds when the record of the proceedings demonstrates an intent to acquit. As such, double jeopardy was triggered when the verdict of acquittal was rendered, and accordingly "that verdict is final and cannot be set aside." *Pugh v. State,* 271 Md. 701, 705, 319 A.2d 542, 544 (1974).

First, the transcript of the proceedings indicates that the trial judge intended to acquit Petitioner. When the trial judge "grant[ed] the motion," the only motion pending at that time was a motion for a judgment of acquittal. Only after the judge granted the motion did the State ask the trial judge to convert the motion or "entertain that [previously granted] motion as a preliminary motion to dismiss," and the judge responded with an ambiguous, "[m]aybe, yeah." When the judge first granted the motion, the most logical conclusion, therefore, is that he was referring to the motion for judgment of acquittal.

Moving beyond the oddity of considering a preliminary motion to dismiss at the conclusion of a trial, even if the judge wanted to change his mind as to the nature of the motion granted, he would have been barred under Maryland's double jeopardy jurisprudence, which holds that a judge may not intentionally grant an acquittal and then change his or her mind. For example, in *Pugh v. State,* the trial judge entered

a "Not Guilty" verdict, and then moments later changed the verdict, presumably based on remarks made by the State after the initial acquittal. This Court held that "[o]nce a trial judge intentionally renders a verdict of 'not guilty' on a criminal charge, the prohibition against double jeopardy does not permit him to change his mind." *Pugh,* 271 Md. at 707, 319 A.2d at 545. Similarly, in *Brooks v. State,* after the trial judge granted a motion for judgment of acquittal on a conspiracy charge, the State convinced the judge to reconsider and later deny his ruling on the motion. The jury thereafter convicted defendant of the conspiracy charge. On appeal, we reversed and explained that once the judge intentionally granted the motion, "[i]t was effective as a final disposition of the conspiracy charge." *Brooks,* 299 Md. 146, 152–55, 472 A.2d 981, 986 (1984).

These cases support the proposition that once a motion to acquit is intentionally granted, a judge may not reverse the judgment, even if he or she intends to do so only moments after the acquittal is rendered. The same rule would apply to this case. Once the trial judge granted the acquittal, he was not permitted to change his mind. Therefore, even if we were to interpret the judge's ambiguous response to the State's request as a change of heart, because of double jeopardy's prohibition, the judge was barred from changing his affirmative decision to acquit.

Next, the critical flaw in the majority's position, that the trial judge actually granted a procedural motion to dismiss, is that when defense counsel asked for a judgment of acquittal, the trial judge was required to consider the entirety of the evidence presented. This included not only the arguments advanced by defense counsel, but also an assessment of all of the evidence or lack of evidence presented. Merely because the trial judge reviewed arguments on service of process deficiencies immediately before granting the motion, does not mean that the judge *only* considered the adequacy of the service issue before making his judgment. Ordinarily, when a trial judge is asked to consider the sufficiency of the evidence, the judge's duty is to consider *all* of the evidence, including

any reasonable inferences to be drawn from the evidence in favor of the State. Without evidence indicating that the judge did not consider the presence or absence of evidence, we will assume that he or she did. *See Brooks,* 299 Md. at 154–55, 472 A.2d at 986 (noting that when the trial court granted the motion, evidence relating to the charge was before the court and "[i]t is obvious that the grant of the motion was predicated, as it had to be, on a review by the judge with respect to the sufficiency of the evidence ...."). In other words, we will presume that the trial judge followed the law. *See Attorney Grievance Comm'n v. Keiner,* 421 Md. 492, 508, 27 A.3d 153, 163 (2011) (citations omitted) (stating that "barring explicit evidence in the record to the contrary, we presume that any hearing judge in conducting ... any [ ] legal proceeding, understands and carries out his or her obligation to follow the law"); *State v. Chaney,* 375 Md. 168, 179–81, 825 A.2d 452, 458–59 (2003) (citations omitted) (discussing the long standing presumption that "trial judges know the law and apply it properly ..."); *Rock v. Rock,* 86 Md.App. 598, 613, 587 A.2d 1133, 1140 (1991) (citations omitted) ("Unless the record is clearly to the contrary, we assume the trial judge knew and followed the law.").

Moreover, the majority is quick to conclude that the "trial court clearly denied" the motion as to the other three charges with regard to the sufficiency of the evidence.[11] When the trial judge granted the judgment of acquittal on the first charge of driving while under the influence of alcohol, TR § 21–902(a)(1), the State did not then, and does not now, dispute the proposition that the trial judge did not limit his consideration of the charges against Petitioner to procedural issues. There is no reason to believe that the trial judge would not have approached his disposition of the remaining charges in a similar manner. Rather, the acquittal and the lack of evidence before the court indicates that the trial judge

---

11. To be sure, the trial judge first stated that he would, "deny the other[ ] [motions] **at this stage** at the end of the State's case." (Emphasis added). The judge obviously reconsidered because later he stated that he would "grant the motion[.]"

was addressing the sufficiency of the evidence relating to the charges filed against Petitioner.

The fact that the remaining charges were all variations of TR § 21–902(a)(1), driving while under the influence of alcohol, further supports the conclusion that the judge considered the sufficiency of the State's evidence as to all of the charges. For example, TR § 21–902(a)(1) requires proof that the alcohol consumed by the driver *"substantially* impaired the person's normal coordination." One of the other charges against Petitioner, TR § 21–902(b)(1), driving while impaired by alcohol, requires proof that the alcohol consumed by the driver "impaired [the driver's] normal coordination to some extent." *See Turner v. State,* 181 Md.App. 477, 490, 956 A.2d 820, 828 (2008) (emphasis added) (citations omitted). The distinction between these two offenses is only a matter of degree. *Id.* The deficiencies the trial judge could have found in the State's evidence with regard to the charge of driving while under the influence of alcohol could have also related to the charge of driving while impaired by alcohol. For example, given the nature of the evidence presented by the State, the trial judge had no substantial basis to conclude that the accident was the result of Petitioner's consumption of alcohol. Absent evidence of why the accident happened, or the level of alcohol in Petitioner's system, or the effects, if any, alcohol had on Petitioner's ability to drive her vehicle safely, the trier of fact would have been left to speculate on the potential guilt or innocence of Petitioner as to TR § 21–902(b)(1), just as the trier of fact would have had to speculate on the Petitioner's guilt or innocence as to TR § 21–902(a)(1).

Also related to these charges is TR § 21–902(c)(1), driving while impaired by drugs or drugs and alcohol, which requires a showing that the "drug so impaired the accused that he [or she] was unable to drive safely." *See Cook v. State,* 62 Md.App. 634, 641, 490 A.2d 1311, 1314 (1985). Similar to the other charges, there was a lack of evidence to support a conviction of TR § 21–902(c)(1). The State's evidence consisted of testimony from several witnesses indicating that Petitioner told them that she had taken Cymbalta, cold medicine,

or muscle relaxers. There was no toxicology report or any other evidence presented by the State to demonstrate the effects, if any, some drug would have had or did have on Petitioner's ability to operate a vehicle safely. There was also no evidence to show that Petitioner was actually driving unsafely before the accident.

Moreover, the State failed to show that Petitioner acted unreasonably in controlling the speed of her vehicle to avoid the collision under TR § 21–801(b). In essence, the law requires a driver "to reduce speed, from what otherwise would be a lawful maximum speed, to that which is reasonable or prudent in light of existing conditions that present an 'actual or potential danger[,]' " such as, for example, a possible collision with a person or vehicle. *See Warren v. State*, 164 Md.App. 153, 161–63, 882 A.2d 934, 940 (2005). In the present case, the State failed to present any evidence related to why the accident happened, other than Petitioner's statement that she "had swerved off the road and into [a] ditch[.]"

Thus, there is no reason to believe that the trial judge did not rule on the sufficiency of the evidence for the remaining charges after he had already ruled on the sufficiency of the evidence to support the related charge of driving under the influence. Given the lack of evidence in this case, and the relationship of the charges to each other, we cannot say that the trial judge did not rule on the sufficiency of the evidence to sustain the remaining charges.

The majority emphasizes that because the judge did not discuss the substance of the charges or the evidence in the case before granting the motion, the judge did not intend to acquit Petitioner. The fact that the trial judge did not discuss the substance of the evidence in granting the motion, however, does not, in itself, indicate that he did not consider the evidence and substance of the charges. When a trial judge grants a motion for judgment of acquittal or enters a verdict of acquittal, the judge need not explain the reason for his or her decision. The Maryland Rules provide that "[a]lthough not required, the court *may* state the grounds for its decision

either in open court or by written memorandum." Md. Rule 4–328 (emphasis added). Providing an explanation or discussion of the grounds for reaching a conclusion, therefore, is optional. *See Pugh,* 271 Md. at 707, 319 A.2d at 545 ("Nothing more is required under the rule for a 'verdict' other than a deliberate pronouncement of 'guilty' or 'not guilty' in light of the facts and the law."). Thus, the absence of an explanation would not imply that the judge did not intend to enter the verdict of acquittal. We have said that the grant of a motion to acquit is akin to the grant of a directed verdict, and has the same force and effect as a verdict of not guilty. *See Brooks,* 299 Md. at 151, 472 A.2d at 984 (explaining that in Maryland, a motion for a judgment of acquittal "has been substituted, in criminal causes, for a motion for a directed verdict of not guilty . . . [,]" and the grant of acquittal "was intended . . . as an instruction that the evidence is insufficient in law to sustain a conviction, which would call for the rendering of a verdict of not guilty"). It follows from our case law, therefore, that a judge is not required to explain the grounds for his or her ruling on a motion for judgment of acquittal either. *See, e.g., Brooks,* 299 Md. at 151, 154 n. 5, 472 A.2d at 984, 985–86 n. 5, (noting that the docket entry made by the judge's clerk, "Motion for Judgment of Acquittal heard and granted[,]" next to the judge's name, "was sufficient to indicate [procedural] compliance" under (the current version of Md. Rule 4–324(b), **Motion for judgment of acquittal**)).

In the present case, the trial judge did not discuss the substance of the remaining three charges when he granted the motion. The absence of a detailed explanation as to the sufficiency of the State's evidence, however, does not render the decision to acquit any less forceful or binding. Nor does it give us reason to conclude that the trial judge must not have intended to grant a motion for judgment. Rather, in granting the motion, the judge entered a verdict of acquittal and no additional discussion by the judge was required.

Moreover, even if the judge erred in granting the motion, Maryland common law mandates that once jeopardy attaches

in a trial, a judgment of acquittal or a verdict of acquittal must stand, even if it is based on a mistake of law including a procedural error, or a mistake of fact. *See Farrell v. State,* 364 Md. 499, 507–10, 774 A.2d 387, 391–93 (2001) (citations omitted) (maintaining that it is impermissible to retry a defendant acquitted at trial for the same crime, even if the judge's legal rulings were erroneous); *Block v. State,* 286 Md. 266, 273–74, 407 A.2d 320, 324 (1979) (explaining that "the fact that the court may not have been authorized under the rules to render the verdict does not make it void for double jeopardy purposes ... an improper or defective exercise of jurisdiction does not deprive an acquittal of its finality"); *Shields,* 49 Md. at 303 (noting that once granted, an acquittal cannot be set aside, even if the verdict is a result of a misdirection on a question of law, or a misconception of fact). In the present case, therefore, even if the trial judge was not correct in concluding that the State's evidence was insufficient to support a conviction, the verdict still stands.

Finally, there is additional evidence supporting the view that the trial judge intended deliberately to terminate the proceedings and enter an acquittal. At the conclusion of the trial proceedings, the trial judge granted the motion, checked "NG" for "Not Guilty" on the docket sheet for each of the four charges, and signed his name at the bottom of the docket sheet. Though there were also boxes available for "JA" (Judgment of Acquittal) and "Dismissed," the granting of a not guilty verdict supports the view that the judge, at the very least, intended Petitioner's trial to end with an acquittal as to all charges. It is also further evidence that the judge had no intention of dismissing the case on purely procedural grounds, or by granting a motion to dismiss.

Thus, whether the trial judge wished to end the proceedings through a grant of judgment of acquittal, or a "Not Guilty" verdict on the merits, the judge made clear his intentions to acquit the Petitioner of the charges against her. Under either scenario, the verdicts of acquittal in favor of Petitioner were

rendered on the evidence. Thus, the verdicts of "Not Guilty" should stand.

I respectfully dissent.

Chief Judge BELL and Judge BATTAGLIA join in the views expressed herein.